## Ex Parte Evariste Bourgeois.

1. MUNICIPAL CORPORATION. *Power to punish offences punishable under State law.*

The power of double punishment for a single act, on the delegation of authority to a local municipality to punish acts which are crimes against the State, by a mode of procedure and degree of punishment unknown to the State law cannot be inferred from a mere general authority to legislate for the good government of the municipality, but must be clearly given, and if not so given does not exist.

2. SAME. *Charter. General terms of, construed. Police power defined.*

In a charter which only gives to a municipality "full power and authority over all matters of *police* within said city; to make, publish, and promulgate all such orders, regulations, ordinances, and by-laws as they may deem necessary and proper for the *good government,* welfare, and harmony of said city, not inconsistent with the Constitution and laws of the State of Mississippi and and United States," no criminal power is intended to be conferred save such as is necessary to insure obedience to *police regulations.* By police regulations in this connection is meant such as have reference to health, cleanliness of streets, wharves, lights, watchmen, and the like, or to the commission of acts which, though not criminal under the State law, might properly be made so when committed within the city limits.

APPEAL from the decision of Hon. GEORGE WOOD, Chancellor of the Seventh Judicial District, on *habeas corpus.*

The writ in this case was sued out by Evariste Bourgeois, who was, on the 25th of July, 1882, committed to jail on the sentence of the mayor of the city of Bay St. Louis on a charge, made on the oath of the city marshal, of being drunk and disturbing the peace within the limits of the city of Bay

St. Louis.   The sentence of the mayor was for twenty days' im-
prisonment and $25 fine, and to give bond for good behavior for
six months.   The ordinance under which Bourgeois was tried
specifies the offence as " cursing, swearing, and being drunk
in public."

In his petition for *habeas corpus* the petitioner states as
the ground of his applicatiion, or the illegality of his deten-
tion, that he had been tried before a justice of the peace for
the district embracing the city of Bay St. Louis for the same
offence, and convicted and fined one dollar and costs before
his trial and conviction before the mayor.

The charter of the city of Bay St. Louis under which the
ordinances were passed and these proceedings had, was enacted
February 24, 1882 (Acts 1882, p. 359), and contains this lan-
guage, referring to the powers of the Board of Mayor and
Aldermen : " They shall have full power and authority over all
matters of police within said city, to make, publish, and pro-
mulgate all such orders, regulations, ordinances, and by-laws
as they may deem necessary and proper for the good govern-
ment, welfare, and harmony of said city, not inconsistent with
the Constitution and laws of the State and of the United
States; said board shall have full power to enforce such reg-
ulations and amercements not exceeding $50, *   *   *   before
the mayor,   *   *   *   or by imprisonment not exceeding one
month, or both, at the discretion of the mayor."

The charge was made before the mayor and a warrant was
issued on the 19th of July, 1882, returnable the 20th of July,
1882 ; and returned " not found."   Another writ was issued
on the 21st, returnable on the 25th, and the accused entered
his appearance.   Between the date of the issuance of the
second warrant and the return-day, to wit, on the 22d of
July, 1882, the constable made oath before a justice of the
peace, and a warrant was issued returnable forthwith.   The
relator was arrested and tried by the justice of the peace on
the 25th of July, early in the morning, between seven and
eight o'clock, before the opening of the mayor's court and
before business hours.

*W. P. & J. B. Harris*, for the appellant.

The grounds of the chancellor's decision are not given. If the ordinance and proceedings under it were valid, the fact that the accused had been tried for the same offence was not a matter to be considered by the chancellor on *habeas corpus*. The fact that there may have existed grounds of defence which should have been allowed if presented, however complete the defence, is not ground for discharging a prisoner convicted over the defence. If the proceedings were absolutely void for want of power in the mayor to act in the matter, if the charter was void, or if it gave no power to pass the ordinance, or if the ordinance is void, then the party may obtain his discharge by *habeas corpus*, or by *certiorari*. *Holberg* v. *Macon*, 55 Miss. 112 ; *Ex parte Wimberly*, 57 Miss. 437. We have been advised by counsel who appeared in the cause that the chancellor held that the ordinance was void, because the offence was one indictable under the general law, and that there was no trial by jury provided for in the charter nor any appeal allowed. The question is therefore not one of power in the Legislature. The general powers are conferred by sect. 5, of the charter of the town. First, there is given full power and authority over all matters of police. It has not been disputed that matters of police may be confided to municipal authorities, both for legislation and adjudication. The police power is not defined in the books. Judge Dillon, in some part of his text, seems inclined to confine to health, safety, etc., not including order, or matters which consist of personal dereliction in morals, or matters which concern peace and order, but he cites cases which extend it to " disorderly houses," " lewd women," etc., etc. *Shaffer and Wife* v. *Mumma*, 17 Md. 331. And certainly full police power in a city to be exercised by ordinances and punishments would embrace disorderly conduct, drunkenness, and vagrancy. In addition to this police power, where no power is withheld, there is the power to govern the city by ordinances for good government, welfare and harmony of the

city, and the violation of these ordinances, by the express language of the Legislature, may be punished by fine and imprisonment, or both, in the discretion of the mayor ; the maximum fine being $50 and imprisonment one month. Taking all this together, it is impossible to conclude that the Legislature did not intend to give the power over affrays in the streets, drunkenness and disorderly conduct generally. If it should be contended that no power to punish any conduct or act punishable by the general law was intended to be conferred, we insist that there is neither reason nor authority for the contention. Judge Dillon, Municipal Corporation, puts forward several propositions '' with distrust '' which require a very rigid and narrow limit to powers conferred in general terms on municipal bodies ; but he agrees with Lumpkin, the ablest of the judges whose opinions he cites, that the proposition that general powers to govern, etc., will not be extended to matters covered by the general penal and criminal laws is to be taken with this qualification, that where the minor offence is particularly hurtful in cities, '' as an affray in the street,'' the rule would not apply. *Savannah* v. *Hussey*, 21 Ga. 80 ; 1 Dill. on Mun. Corp. 367. Judge Cooley says that the same act may be an offence against the State and the corporation. Cooley's Const. Lim. 198, 199, note 4. The unusual fulness of the granting words of this charter, and the punishments allowed to be inflicted, all go to show that the Legislature at least meant to give power over those disorders which affect the peace of the city. The question here is of great practical importance. Very few municipal charters enumerate the specific matters intended to be committed to municipal legislation. The court is referred to some of these : Corp. of Marion, Acts 1848, p. 389 ; Corp. of Macon, Acts 1870, p. 553 ; Corp. of Kossuth, Acts 1870, p. 540 ; Corp. of Byram, Acts 1870, p. 550 ; Corp. of Raleigh, Acts 1867, p. 160. The original charter of the city of Jackson, passed nearly a half century ago ( 1840 ), contained but the general words of grant. The charter in general terms fixes a maximum punishment, and that

is sufficient, and an ordinance which does the same thing is sufficient.   1 Dill. on Mun. Corp. 344, 347.   The accused was arrested on a warrant founded on oath made in writing.   Witnesses were summoned for the day of trial.   The accused was present and had witnesses sworn in his behalf.   He was fairly tried for an offence declared by ordinance, legally passed, and sentenced to fine and imprisonment within the limits prescribed as well by the charter as the ordinance.   The trial before the justice was not only collusive, but was no ground for discharge on *habeas corpus*.   If he had been indicted in the Circuit Court, though not arrested, no justice of the peace could oust the Circuit Court of jurisdiction.   The indictment is the commencement of a prosecution.   So the oath and warrant before the mayor was clearly the beginning of a prosecution.   It would be absurd, if the mayor had jurisdiction, to hold that the very early trial " before breakfast " by Justice Jones ousted the mayor's jurisdiction.

*W. P. Harris*, argued the case orally.

*Ben Lane Posey, contra.*

The first question that arises in this case is, was there a valid ordinance against the act charged against the prisoner? Did this corporation have by its charter power to punish this offence?   We insist there was not.   The charter of a corporation is the measure of its power — the length of its tether — which it cannot exceed.   And these grants of power are strictly construed, especially so where they are penal and harsh in their character.   What the Legislature does not grant, it means to prohibit.   There is nowhere in the charter any shadow of power to this corporation to define or punish any act which is an offence against the State, to make this corporation an auxiliary, an *imperium in imperio*, to aid the State in preserving its peace, or its public morals.   It is a significant fact that the mayor is not even a conservator of the peace, and has no criminal jurisdiction of any kind.   The only power given to this corporation to make ordinances is given in sect. 5 of the charter.   Acts 1882, p. 362.   It is defined as " full power and

authority over all matters of police within said city," and such
as they may deem necessary for the good government, wel-
fare, and harmony of said city." What is meant here
by "matters of police," and the more general words fol-
lowing, is matters of local police. Each village, town, and
city, according to size, location, trade, health, etc., has its
own peculiar wants and necessities, and it is over these that
it is intended to confer authority by such words as "matters
of police." These words are significantly restrained in their
meaning by the following words of qualification : matters of
police "within said city," clearly showing it was not intended
to confer powers upon matters of general police, but only
such as were peculiar and proper to this corporation. 1 Dill.
on Mun. Corp. (3d ed.), sect. 368 ; see also note to above sect. ;
21 Geo. 80. *Vason* v. *Augusta*, 38 Ga. 542 ; 53 Ga. 73 ;
7 La. An. 651 ; 5 La. An. 747 ; 17 Mich. 390 ; 78 Mich.
445 ; 8 Mich. 110 ; *The State* v. *Cowan*, 29 Mo. 330. See also
*Leonard* v. *City of Canton*, 6 Geo. 189 ; *Gaines* v. *Coates*,
51 Miss. 335 ; *Sykes* v. *Mayor of Columbus.* See 1 Dill.
on Mun. Corp. (3d ed.), sect. 366. It is not to be sup-
posed that the Legislature intended that a person should
be twice vexed, or punished, either in a civil or criminal form
of proceeding, for the same act or transaction. In a few in-
stances, the Legislature has so declared its will, as in the case
of libels, assaults and batteries, and homicides. But in these
cases the legislative intent is clearly expressed, and the person
injured has a common-law and constitutional right to his remedy
for the private injury. Besides, it is a very usual feature of
our municipal charters, to confer expressly upon the municipal
body power to suppress and punish affrays, assaults and bat-
teries, and drunkenness, and such petty offences. The omission
of this charter to confer such power, is an expression of the
legislative will that it should possess no such power. But
ordinances must be reasonable ; if not reasonable they are void.
1 Dill. on Mun. Corp. (3d ed.), sect. 327. This is not only
an unreasonable but a most preposterous ordinance. It adopts

and re-enacts, as an ordinance, the entire criminal code of the State. It subjects to the same mode and measure of punishment the lightest misdemeanor and the most enormous felony. The man who is simply drunk, or utters profane language in public, is subject to the same punishment as the murderer. And all this range of punishment is left to the unregulated and arbitrary discretion of a petty officer. It has often been held and long was the law, that an ordinance was void unless the penalty was definite and certain. Though this rule has been relaxed, it still exists and cannot well be relaxed so as to let in such wild and dangerous discretion as is here permitted. The ordinance is unreasonable for another reason : The Legislature has declared by statute what is a reasonable penalty for drunkenness, — only a fine of $10 as the maximum ; but this ordinance permits a penalty of $50 as a fine, and imprisonment for one month. Surely, it cannot be reasonable to punish so much more severely the same act, in violation of a municipal ordinance, than in violating the State law. It cannot be a greater offence to violate a municipal ordinance than to violate a State law.

*Ben Lane Posey*, also made an oral argument.

Chalmers, J., delivered the opinion of the court.

The mayor and aldermen of the city of Bay St. Louis were by the act of incorporation given " full power and authority over all matters of police within said city ; to make, publish, and promulgate all such orders, regulations, ordinances, and by-laws as they may deem necessary and proper for the good government, welfare, and harmony of said city, not inconsistent with the Constitution and laws of the State of Mississippi and of the United States." Acts 1882, pp. 359–362.

By virtue of this authority they passed two ordinances, providing for the punishment by fine and imprisonment of all acts which are made felonies or misdemeanors by the laws of the State of Mississippi, when the same should be committed within the limits of this city. The mode of trial was wholly

unlike that provided by the general laws of this State, and the punishment differed as to most of the offences embraced by these ordinances.

Did the charter warrant this assumption of power?

We held in *Johnson* v. *The State*, 59 Miss. 543, that it was competent for the Legislature to delegate to a municipality the right to make acts which were punishable by the State punishable also by the municipal authorities when committed within their corporate limits. And while the cases elsewhere are not harmonious, the doctrine announced by us is said by Judge Cooley to be supported by "the clear weight of authority." Cooley's Const. Lim. 199, note 4. Whether this power to declare acts criminal by the general laws of the State punishable also under town ordinances and thus inflict double punishment for the same offence can be deduced from a grant in a city charter of authority to make by-laws and ordinances for the welfare and good government of the city, or other general words of similar import, is a question upon which the authorities are in hopeless conflict. The various cases are collected and grouped in the note to 1 Dill. on Mun. Corp. (3d ed.), sect. 368. An examination of them leads the author to the conclusion, expressed with some diffidence, that this power of double punishment for a single act on this delegation of authority to a local municipality to punish acts which are crimes against the State, by a mode of procedure and degree of punishment unknown to the State law, cannot be inferred from a mere general authority to legislate for the good government of the municipality, but must be clearly given, and if not so given does not exist.

An investigation of the cases, and a consideration of the principles on which they rest, induce us to accept Judge Dillon's conclusion, and this conclusion is fatal to the validity of the ordinances here in question.

It is by no means clear, from our attentive perusal of the charter of Bay St. Louis, that any criminal power was intended to be conferred save such as was necessary to insure obedience

to such police regulations as might be from time to time ordained. We mean by police regulations, in this connection, such as have reference to health and cleanliness to streets, wharves, lights, markets, watchmen, and the like, or to the commission of acts which, though not criminal under State laws, might properly be made so when committed within city limits. We can see no clear expression of legislative will that an observance of the criminal laws of the State might, within the city, be insured by the double security of State and municipal authority by making a violation of them doubly punishable as an offence both against the peace and dignity of the State and against the quiet and good order of the city. While it might be eminently wise and proper so to do, it does not clearly appear that it has been done.

The offence committed by the relator in this case was that of being drunk in a public place, which is criminal and punishable under the State law. For it he had been punished by the justice of the peace of the beat in which the city is included. We fail to discover any authority in the charter for punishing it again as an offence against the city.

The judgment of the chancellor, discharging the relator, is affirmed.