HINDS COUNTY *et al.* v. JOHNSON *et al.*

(Division A. Dec. 3, 1923.)

[98 So. 95. No. 23795.]

1. CONSTITUTIONAL LAW. *Doubts resolved in favor of constitutionality.*

In determining the question of the constitutionality of a statute, all doubts must be resolved in favor of its constitutionality, and, if possible, the constitutional provision in question must be read into and become a part of the statute, and, unless the Constitution and statute are squarely in conflict, the statute must stand.

2. EMINENT DOMAIN. *Statute providing for condemnation of land for highway purposes held not unconstitutional.*

Sections 4400 to 4402, inclusive, Code of 1906 (sections 7080 to 7082, inclusive, Hemingway's Code), providing for the laying out, altering, or changing of public highways, and condemning rights of way therefor, and providing compensation for the owners of such rights of way, are not violative of section 17 of the Constitution, which prohibits taking or damaging property for public use, except upon due compensation being first made to the owner.

3. EMINENT DOMAIN. *Constitutional requirement of just compensation satisfied, when public faith and credit are pledged.*

The taking of property for public use by a state or one of its municipalities need not be accompanied by or preceded by pay-

ment, but the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge.

4. EMINENT DOMAIN. *Statute held to authorize occupancy by county of land condemned for highway purposes in advance of actual payment.*

Under sections 4400 to 4402, inclusive, Code of 1906 (sections 7080 to 7082, inclusive, Hemingway's Code), providing for laying out, altering, or changing public highways, and the condemnation of rights of way therefor, and compensation to the owners of land condemned for such purposes, the county, in condemning land under said statute, may occupy and use such rights of way in advance of *actual payment* therefor, where notice has been given and a fair opportunity afforded the landowner to propound his claim for compensation before such taking and occupation by the county as provided in said statute, and in so doing section 17 of the Constitution, requiring compensation in advance, is not violated.

5. HIGHWAYS. *Taxpayer not entitled to injunction against construction of overhead passway at crossing.*

Even though a county had no right under the law to make a contract for an overhead passway at a public highway and railroad crossing, still a landowner and taxpayer of the county has no right to enjoin the carrying out of such a project, where it is shown that the entire costs will be borne by the railroad company, whose track is crossed, and the federal and state highway departments, and the entire upkeep for the future will be borne by the state highway department.

APPEAL from chancery court of Hinds county, First District.

HON. V. J. STRICKER, Chancellor.

Action by Joel F. Johnson and others against Hinds county and others. Decree for plaintiffs, and defendants appeal. Reversed and dismissed.

*Watkins, Watkins & Eager, Fulton Thompson,* and *R. H. & J. H. Thompson,* for appellants.

The contract was executed after the board of supervisors had accurately followed the provisions of the statutes and

after notice duly given to the complainant, now appellee
Johnson; he being the only person whose land was in any
way affected by the proceeding and a very small part of it
was to be taken.   The railway company owned its track
and the land under it and its right-of-way; the right-of-
way extended fifty feet on either side of the center of its
track, and no part of the bridge proper has been, or is to be
constructed on Johnson's land.   However, the Western
approach to the bridge is in small part located on a
trifling strip off the Southern boundary of Johnson's
land, aggregating, as shown by the evidence, less than one
acre.   Johnson appeared before the board of supervisors,
in person or by attorney, in response to the notice, served
on him, and appared at all of its meetings.   He did not
object to the jurisdiction of the board.   He allowed the
contractors to enter upon the work and expend much
labor and money on the erection of the bridge and its ap-
proaches and did not institute this suit for many months
after construction began.

Sections 7080, 7081, 7082 and 7084, Hemingway's Code
have been in force, enforced and judicially respected at
least since March 2, 1833, more than ninety years.   The
public, the courts and the legislative department of the
state government have treated the statutes as valid under
the Constitutions of 1832, 1869, and 1890.

Bearing in mind that the sections of our state Constitu-
tions of 1832, 1869 and 1890, pertinent to this case, are
in substantially the same words, we must also remember
that these statutes have been enacted or reenacted not
less than five separate times and have been enforced hun-
dred of times, in all probability as many as one thou-
sand times; and have been respected and enforced a con-
siderable number of times by the trial courts, and by this
court.

This court has heretofore passed upon and enforced the
statutes under consideration in a large number of cases.
It is true that the constitutionality of the statutes has

133 Miss.—38

not been raised in some of them, but the assumption of their constitutionality of litigants, attorneys and the court evidences the long continued and practically universal acquiescence in their validity. We cite eleven separate decisions of this court recognizing the constitutionality of the statutes. They are: *Kinnare* v. *Gregory,* 55 Miss. 612; *Sullivan* v. *LaFayette County,* 58 Miss. 790; *Cage* v. *Trayer,* 60 Miss. 563; *Sullivan* v. *LaFayette County,* 61 Miss. 271; *Copiah County* v. *Lusk,* 77 Miss. 136; *Rainey* v. *Hinds County,* 78 Miss. 308; *Craft* v. *DeSoto County,* 79 Miss. 618; *State* v. *Morgan,* 79 Miss. 659; *Illinois, etc., R. Co.* v. *Swalm,* 83 Miss. 631; *Illinois, etc., R. Co.* v. *State,* 94 Miss. 759; *Humphreys County* v. *Washington County,* 128 Miss. 132.

The supreme court of the United States in the case of *Joslin* v. *Providence,* 262 U. S. 668, uses the following language: "We next consider the contention that the act permits the taking of property and it grants the power to lease, sell or dispose of it without an offer to pay compensation therefor or a determination of it in advance. It has long been settled that the taking of property for public use by a state or one of its municipalities need not be accompanied by or preceded by payment, but that the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonable prompt ascertainment and payment, and there is adequate provision for enforcing the pledge. *Sweet* v. *Rechel,* 159 U. S. 380, 400, 404, 407; *Williams* v. *Parker,* 188 U. S. 491, 502-53; *Crozier* v. *Krupp,* 224 U. S. 290, 306; *Bragg* v. *Weaver,* 251 U. S. 57, 62; *Hays* v. *Port of Seattle,* 251 U. S. 333, 338."

In this case the court held that the statutes did not violate the Fourteenth Amendment to the Constitution of the United States, but it is especially significant that in one of the cases cited, *Bragg* v. *Weaver,* 251 U. S. 57, was before the court on writ of error from the supreme court

of the state of Virginia, wherein the Virginia court held that the taking was not in violation of the Virginia Constitution, section 58 of which is almost identical in language with the Constitution of the state of Mississippi.

*Cage* v. *Trager*, 60 Miss. 563, was a case wherein the constitutionality of the Act of 1882, Laws of Mississippi 1882, page 273, was assailed as being unconstitutional. The act provided for the condemnation of lands for the purpose of establishing landings on the banks of navigable rivers. The board of supervisors of Wilkinson county had proceeded to condemn the lands of Cage, et al., the appellants in the case, and had taken possession of their real estate for that purpose. CHALMERS, J., delivering the opinion of this court, having shown the act was assailed as being unconstitutional because the party condemning the land had not instituted and carried through proceedings for the ascertainment of the damages to be paid to the owners of the property taken, but devolved that duty or privilege on the owners, said the court was satisfied that there was no sound constitutional objection to the provision of the Code of 1871 on the subject or to the special Act of 1882 involved in that case.

The decree appealed from should be reversed, even if the court shall adjudge that Johnson must be paid before the county can acquire a right to his property involved in this suit. The utmost relief that could have been awarded Johnson, the law being as his attorneys contend, without error would have been a requirement that the board of supervisors should institute an eminent domain proceeding in order that Johnson might be brought before the eminent domain court and have a judgment awarded fixing the damages to which he may be entitled. Upon the payment of the judgment the county would obtain the land claimed by Johnson to have been taken from him.

There is no disposition on the part of Hinds county, or any other defendant to this suit, to deny Johnson just

compensation. The court has decided in the case of *Copiah County* v. *Lusk,* 83 Miss., that the facts shown in the suit at bar give Johnson a right to bring a suit for the recovery of his damages. The board of supervisors all along has been entirely willing to have appellee's damages assessed and will cheerfully pay the same when the amount is ascertained and determined.

All this has been said not because we regard the statutes under which the board of supervisors acted as being invalid, but because we wish to point out that the decree appealed from is erroneous, even if this court should differ from us touching the validity of the statutes mentioned. The decree of the chancery court is erroneous in still another most material particular. It enjoins the county from carrying out its contract with Blodgett and the Blodgett Construction Company. This it did, as we are advised, because the chancellor was of the opinion that an overhead bridge across the railway track was unnecessary or too costly and that the grade crossing, already in existence, was all that the public need required. These are subject-matters confined by law exclusively to the judgment of the board of supervisors over which the chancery court has no jurisdiction, original or appellate.

The public interest in this suit should be considered and preserved and that interest is given special force in this case because of the fact that it is not protected by the decree appealed from and, if the decree shall be affirmed, one-half the cost of the overhead bridge to be paid by the Federal Government will be wholly lost, as will also be the railway company's substantial contribution for the construction of the bridge.

It is charged in the bill that the railway company was under duty to construct and maintain the over-head bridge and that the board of supervisors was without power to make appropriations for paying for such a structure. Mississippi Code, 1906, section 4053, does not support the conception upon which the charge is supposedly based.

The railway track at the place where the bridge is located is practically upon the level of the surrounding soil, and the railway company has for years maintained a grade crossing. This court has decided that the grade in the highway required by the section depends upon the extent to which the railroad track is above or below the natural surface of the earth. *Gulf, etc., R. Co.* v. *Sneed,* 84 Miss.

Again the costs of the bridge and its magnitude proves beyond question that if there had been an overseer he and "the hands belonging to the road" could not have constructed it. See record pp. 144 et seq. showing the bridge to cost forty-six thousand, eight hundred ninety-seven dollars and seventy-two cents of which the United States Government was to pay one-half, twenty-three thousand, four hundred forty-eight dollars and eighty-six cents, the railway company fifteen thousand nine hundred eighty nine dollars and fifty-nine cents, and the state highway department ten thousand dollars, leaving the county a gainer by two thousand, five hundred forty dollars and seventy-three cents; this gain to be applied to other parts of the highway. This court must know judicially the overseer, if there were one, and the road hands, if any there be, could not build such a bridge.

*Flowers & Brown* and *Alexander & Alexander,* for appellees.

The constitutional requirement that private property shall not be taken or damaged for public use without compensation being first made to the owner. Section 17 of the Constitution of 1890.

Section 10 of article 1 of the Constitution of 1869 is as follows: "Private property shall not be taken for public use, except upon due compensation first being made to the owner or owners thereof, in a manner to be provided for by law."

The Code provisions defining the manner in which a public road may be laid out or changed have been in many

respects the same at least as far back as 1857. However, the Code of 1892, first omitted from these provisions the fundamental requirement appearing in the previous Codes: "It shall not be lawful to open said road for use until the damages shall be assessed and paid."

There is no requirement that notice be given of the purpose to go on the land nor of the hearing at the subsequent meeting. If the report of the committee is confirmed it is entered at large on the minutes of the board and the board "shall assign the necessary hands for opening and working the road."

If the owner of the land shall claim compensation for a public road, or for damages sustained by the construction of the road he shall petition the board of supervisors at its next meeting. Whatever damages may be allowed shall be paid out of the county treasury and all proceedings of the board in laying out the road and assessing damages may be reviewed on appeal by the circuit court.

Does the statute meet the requirement of the Constitution by giving to the landowner the right to make his claim for damages within thirty days from the time the report of the committee marking and laying out the road over his land is confirmed?

The plan evidently contemplates that the formality of the taking is concluded with the confirmation of the report of the committee and the assignment of hands to take charge of the road. The question of compensation is left as the only one to be further considered. And the owner may make his claim at the next meeting of the board or be forever barred. Not only does the statute omit any requirement that compensation shall be first made before private property is taken, but it even requires that if the owner shall have a demand to make to get damages for himself he must do it within thirty days from the time his land is taken.

The only case that has seemed to hold that a method of taking could be upheld although it allowed the taking

of the property before compensation first paid is *Cage* v. *Trager*, 60 Miss. 563. This decision was rendered by Judge Chalmers. The court said that the manner provided for the condemnation of land for a steamboat landing was substantially the same that the law provided for the condemnation of land for road purposes, and that to condemn this law under which the steamboat landing was taken would condemn the road law. But the Act of 1882 under which the steamboat landing was taken required that the property shall not be taken possession of until the amount found due had been paid or tendered.

The Act of 1882 discussed in *Cage* v. *Trager, supra,* and held to be constitutional, expressly provided that there should be no taking of the property until the damages shall be assessed and paid or tendered to the party entitled thereto. See section 5 of chapter 269, Laws of 1882, page 276. This is the very provision left out of the present road law. The court did not in that case have the road law before it. What the court said about the road law in that case was *dictum.*

No court has discussed and upheld the statutory method of taking private property for public roads. In *Craft* v. *DeSoto County,* 79 Miss. 618, 31 So. 204, the court only held that the authority of the board of supervisors to lay out and open public roads is a special statutory authority, not according to the course of the common law, and that it is essential that the jurisdictional facts appear of record.

The case of *I. C. Railroad Company* v. *State,* 48 So. 561, 94 Miss. 759, holds that the statutory provision for laying out public roads may not be employed by a municipality.

The last discussion of the question here presented is that by Judge Campbell in *Yazoo Mississippi Delta Levee Board* v. *Dancy,* 65 Miss. 335. Judge Campbell emphasizes the essentials of every valid proceeding by which private property is taken for public use. The most important of these is that compensation must be first made.

He rejects, as being wholly unsound, the suggestion that compensation is made in advance of the taking of the land by merely giving the landowner the right to bring suit to recover his damages, or by giving him the right to apply to a certain board within a fixed time to get his damages ascertained and awarded.

· The county has no more power or rights in this respect · than a railroad or other public utility company having eminent domain powers. The landowner cannot more promptly or certainly get his compensation or damages out of the county or the state than he can out of private persons or corporations. In fact it is more difficult to get money out of the county or state for the reason that there is no way to enforce the judgment.

When we look at this section of the Constitution as part of our bill of rights; when we recall that it is the result of an attempt to remedy an ancient wrong; when we take into account that the damages to private property have come from activities of the sovereign, we see that we would do violence to the constitutional provision and the reasons that underlie it if we should say that while private corporations having eminent domain powers must pay in advance the sovereign or the representative of the sovereign may take the property and pay for it in its own good time.

In fact the words in the said section 17 "without compensation being made" would have to be written out. Any time when a man takes another's property the original owner has his suit for damages and compensation. He needs no constitutional provision to give him this right. He has it already. The constitutional provision, as Judge SHARKEY expressly pointed out in 4th How., was intended to guarantee the landowner payment in advance of the taking. That is what the word "first" was used for.

This road law allows the board of supervisors to take possession of the land at once upon the approval or confirmation of the report of the committee. The landowner

is extended the privilege of making his claim for damages within thirty days. In other words, the landowner may bring his suit against the county. He is required to become the actor. In the meantime his land is being taken. He may sue and get a judgment months thereafter. After he gets his judgment it may or may not be paid promptly. This depends upon the state of mind of the members of the board. After the amount is ascertained it may take a mandamus proceeding to get his pay. Judge CAMPBELL said in the Dancy case that " a right to ask for compensation in three months or three years in not a valid substitute for the constitutional right to 'due compensation first being made.'" And Judge SIMRALL, in *Pearson* v. *Johnson, supra,* said that "the right to sue for compensation within a time limited cannot be substituted for the right to compensation in advance."

The board of supervisors of Hinds county had no authority in law to enter into a contract with the appellants, or either of them, to construct or erect the overhead railroad crossing, or any part thereof.

"Counties being created for the purposes of government, and authorized to exercise to a limited extent a portion of the power of the state government, have always been held to act strictly within the powers granted by the legislature act establishing them. Accordingly, the statute is to them their fundamental law, and their power is only coextensive with the power thereby expressly granted, or necessarily or reasonably implied from its granted powers. All the powers with which the county is intrusted are the powers of the state, and all the duties which they are charged are the duties of the state, and hence these powers and privileges may, in general, be changed, modified or taken away." 7 R. C. L., pages 936-937.

Keeping the proposition just announced before us, let us see if we can, with reasonable accuracy, determine whether the county of Hinds, through its board of supervisors, could legally contract to erect the superstructure

over the railroad crossing. It is true that section 170 of the Mississippi Constitution. gives the board of supervisors jurisdiction over roads, ferries and bridges, this authority is granted in the following language: "Each county shall be divided into five districts. A resident freeholder of each district shall be elected, in the manner prescribed by law, and the five so chosen shall constitute the board of supervisors of the county, a majority of whom may transact business. The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law."

This authority over roads and bridges is "to be exercised in accordance with such regulations as the legislature may prescribe." What then does the legislature prescribe? Section 3680, Hemingway's Code, simply enumerates the general powers conferred by the Constitution as follows: "The board of supervisors shall have within their respective counties jurisdiction over roads, highways, ferries, and bridges, and all other matters of county police."

It would be confusing to this case to attempt to give an exact definition of the word "bridge," but it is reasonable to assume that the jurisdiction of boards of supervisors over "bridges" is necessarily limited to bridges "on any road," meaning the necessary structures for spanning a "hollow or waterway, including the approaches." *Yocum* v. *City of Sheridan,* 137 Pac. 222.

The necessity of providing a railroad crossing in this instance, and even the necessity of erecting the monstrous structure involved in this case of seventeen hundred feet in length, if such exists, is occasioned by the existence of the railroad's right-of-way and tracks. No stretch of imagination can make the crossing anything more than a "railroad crossing," whether it be called a bridge, span, superstructure, overhead pass, or what not. The legislature has specifically provided that railroad crossings shall be

erected and maintained by the railroads, a question upon which we will elaborate more at length, but just now it is sufficient to state that by no process of reasoning can it be correctly asserted that the board of supervisors of Hinds county could build, or contract to build this peculiar overhead railroad crossing, under the general powers given by the Constitution and section 3680. A case pertinent to this argument is *Board of Supervisors of Quitman County* v. *Carrier Lumber Company,* 60 So. 326.

Judge ETHRIDGE held in *Thomas* v. *Supervisors of Harrison County,* 118 Miss. 319, 79 So. 177, that: "Boards of supervisors cannot build breakwaters for highways unless it is reasonably certain that in the near, as distinguished from the remote, future the sea will encroach upon and damage the highway. The board of supervisors cannot under the pretense of building or repairing a road, build a sea wall."

Our next inquiry will be confined to the question of the common law or fundamental right of the government or subdivision thereof to compel any person or corporation, to build bridges or grades, or to remove obstructions that may be necessary or that might interfere with the demands of the traveling public.

The governmental right of control over roads and highways is paramount to any private rights that may interfere. When, by reason of the march of progress, the public needs require improvements or alterations in the roads or highways, any person or corporation, who may have, by charter, franchise or otherwise, acquired conflicting private rights, such private rights must give way.

The rights of the public are accurately set forth in *Scott* v. *Hart,* 91 So. 19, where this court quoted to adopt the opinion of *Hadfield* v. *Lundin,* 98 Wash. 657, 168 Pac. 516, L. R. A. 1918 B. 909; Ann. Cas. 1918 C. 942. Section 6677 Hemingway's Code, section 4053, Code of 1906, specifically places upon the railroad company the duty of constructing the grade crossing in question.

Analyzing the statute we note that it is the duty of the railroad company to provide the bridge, when it has been found "necessary to raise" the grade. The statute has been frequently upheld in Mississippi, and recalling that our friends stated to the lower court that the statute did not apply to railroads long established, in passing we might refer to *Illinois' Central Railroad Company* v. *Copiah County,* 81 Miss. 685, 33 So. 502.

Argued orally by *R. H. Thompson* and *W. H. Watkins,* for appellant, and by *James Alexander* and *J. N. Flowers,* for appellee.

ANDERSON, J., delivered the opinion of the court.

The appellee Joel F. Johnson enjoined appellants, Hinds county, Blodgett Construction Company, and Alabama & Vicksburg Railway Company, from carrying out the construction of an overhead passway at the first crossing · west of the city of Jackson of the main line of the Alabama & Vicksburg Railway Company and the Jackson-Clinton public highway, and the said county of Hinds from changing the course of said public highway at and near said crossing. The cause was tried on bill, answers of appellants, and proof, and a decree was rendered sustaining appellee's bill in part, from which appellants prosecute this appeal.

Conceiving that it was necessary for the safety and convenience of the traveling public, the board of supervisors of Hinds county entered into a contract with appellants Blodgett Construction Company and the Alabama & Vicksburg Railway Company for the construction by the said Blodgett Construction Company of an overhead passway at said crossing of the Alabama & Vicksburg Railway and the Jackson-Clinton public highway. The carrying out of said project necessitated a change in said highway at and near said crossing. In making said change it became necessary for the county to acquire a

right of way for said highway through the lands of ap-
pellee. This change in the public highway was undertaken
to be made by the county under sections 4400 to 4402, in-
clusive, Code of 1906 (sections 1080 to 7082, inclusive,
Hemingway's Code). The grounds of complaint upon
which appellee's bill for injunctive relief was based were:
First, that said statute providing the method for the al-
teration or change in a public highway and the condem-
nation of sufficient lands therefor is violative of section 17
of the Constitution, in that it authorizes the taking of
property for public use without first making compensation
therefor; and, second, because the county was without au-
thority of law to contract for the construction of said over-
head crossing and expend money therefor.

In making the proposed change in said public highway
the county complied strictly with the provisions of the
above statute. In determining the question of the con-
stitutionality of said statute, the following principles of
construction should be borne in mind: That all doubts
as to its constitutionality will be resolved in its favor. The
court must be convinced beyond a reasonable doubt of the
unconstitutionality of the statute, and, where two different
interpretations are possible, that which will uphold its
validity should be adopted. *University of Miss.* v. *Waugh,*
105 Miss. 623, 62 So. 827, L. R. A. 1915D, 588, note, Ann.
Cas. 1916E, 522; *Johnston* v. *Reeves & Co.,* 112 Miss. 227,
72 So. 925; *State* v. *Wheatley,* 113 Miss. 555, 74 So. 427.
There is no positive provision in the statute involved ex-
cluding the operation of section 17 of the Constitution. It
is true that the last clause of said section 4401, Code of
1906 (Hemingway's Code, section 7081), provides that,
when the report of the committee appointed to view and
lay out the proposed alteration or change in the highway
is confirmed by the board of supervisors, it is the duty of
the latter to assign the necessary hands for the opening and
working of such road. But this provision does not necessa-
rily mean that the county shall take possession of the land

necessary to make the proposed alteration or change until it is condemned and compensation made therefor as provided in the last section of said statute. Section 17 of the Constitution will be read into the statute, if possible to do so without destroying the statute. In other words, unless the statute clearly and unmistakably excludes the operation of the Constitution, the statute will be upheld.

So viewing the statute here involved, we are of opinion that it is not violative of section 17 of the Constitution; that a county altering or changing one of its public highways under its provisions cannot enter upon and appropriate for said use the land of another without making compensation therefor in advance of such appropriation and use. However, the bill in this case alleges that as a matter of fact the county *did* enter upon and appropriate appellee's land to its use without first making compensation therefor. The evidence shows without conflict that neither the county nor the appellant Blodgett Construction Company entered upon or appropriated appellee's land until after the expiration of thirty days from the laying out of the proposed alteration or change in said highway and the confirmation thereof by the board of supervisors. In other words, the evidence shows that the county complied with the provisions of the last section of said statute. It is true that some materials were placed upon appellee's land by appellant Blodgett Construction Company before the expiration of said period; but it was done with the appellee's consent or acquiescence, without waiving any of his rights. Appellee having failed to petition the board to have his damages ascertained and awarded as provided by said statute and within the time fixed thereby, appellant Blodgett Construction Company and the county proceeded with the proposed alteration or change in said highway, and the construction of said overhead passway, whereupon the bill in this cause was filed, enjoining the further progress of said work.

Are the state and its political subdivisions barred by section 17 of the Constitution from taking property for public use without making compensation in advance therefor, in the sense that the owner must first be paid or tendered in actual currency of the government the damages he had suffered? Clearly, under decisions of this court, that is the rule where property is taken for public use by others than the state or some political subdivision thereof. We think this question was answered in the negative by *Cage* v. *Trager,* 60 Miss. 563. It was distinctly held in that case that the state, or any political subdivision thereof, seeking to condemn land for public use, might occupy and use the land in advance of actual payment therefor, and that where notice was given the owner, and a fair opportunity afforded him to propound his claim for compensation, there was no constitutional objection to the requirement that the duty should be upon the owner to take the initiative and propound his claim. In its opinion the court referred to, as sustaining that position, Cooley's Constitutional Limitations, 560 to 562, inclusive.

In the recent case of *Joslin* v. *Providence,* 262 U. S. 668. 43 Sup. Ct. 684, 67 L. Ed. —, the supreme court of the United States, in discussing this question, said, among other things: "It has long been settled that the taking of property for public use by a state or one of its municipalities need not be accompanied or preceded by payment, but that the requirement of just compensation is satisfied when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge."

The requirement of compensation in advance was to *insure* payment to the owner. It was in the nature of a guaranty against insolvency of the taker of his land. It was to relieve him of the uncertainties and exigencies of an ordinary unpaid claim, subject to be reduced to judgment, resulting in a *nulla bona* execution. These reasons can have no application or force to the taking of private

property for public use for the state or any of its political subdivisions. There can be no personal judgment against the taker enforceable by execution. The taking in such a case means that the entire faith and credit and taxing power of the political body exercising the right is pledged to make the owner due compensation when ascertained.

The taking and appropriation under this statute by the county under the facts of this case were tantamount to a tender by the latter, at the time of such taking, of just compensation to the owner. It was the only tender the county was authorized to make under the law, and for all practical purposes it was a tender of the true amount due. Appellees argue that *Joslin* v. *Providence, supra,* is not in point, because the provision of the West Virginia Constitution involved in that case did not require compensation in advance of taking. The supreme court, however, in that case proceeded upon the principle laid down by a great many authorities that compensation must be made in advance by payment or tender, even though the Constitution or statute involved does not so expressly provide. As to the general rule, in the absence of positive requirement, see C. J. section 271, p. 837.

Appellee relies upon the case of *Levee Commissioners* v. *Dancy,* 65 Miss. 335, 3 So. 568. It will be observed in the first place that that case neither overruled nor modified the principle laid down in *Cage* v. *Trager, supra.* On the contrary, it expressly recognized the principle here invoked by stating what was decided in *Cage* v. *Trager,* and distinguishing it from the Dancy Case. The difference in the two cases is simply this: In the Cage-Trager Case there was a taking of property by a political subdivision of the state, while in the Dancy Case the board of levee commissioners for the Yazoo-Mississippi Delta was treated as a private corporation and not a political subdivision of the state. And the court held therefore that the principle applying to the state and its political subdivisions had no application, and the owner, had to be compensated be-

fore the taking of his property, and the statute there involved requiring him to make claim for his compensation and limiting the time of its making was void.

Appellee having failed to petition the board of supervisors to have his damages assessed within the time prescribed by the statute, but instead having filed his bill to test the constitutionality of said statute, there may be a question as to whether his claim is barred, but it is not presented for decision in this case.

Appellees argue at length that the county had no right under the law to make a contract for the construction of said overhead passway. It is not necessary to decide this question for the following reasons: The evidence shows without conflict that the construction of the said overhead passway and the approaches thereto will cost the county nothing, nor will its upkeep; that the county had a contract with appellant Alabama & Vicksburg Railway Company and the state highway department and the Federal highway department by which they pay all the cost of said structure and its approaches and something like two thousand five hundred dollars more, and in addition that the entire upkeep of said overhead passway will be maintained at the expense of the state highway commission and without any expense to the county.

We therefore hold that appellee has no standing in court. As a landowner and a taxpayer of the county no immediate nor prospective burden is placed upon him by the carrying out of said project. It may be conceded, therefore, that the county was without authority to make said contract, still the appellee cannot complain because as a property owner he will be actually benefited thereby instead of damaged. It will cost him nothing. Certainly appellee has no right as a taxpayer to enjoin the board of supervisors from accepting donations from the Federal and state highway departments and the Alabama & Vicksburg Railway Company for the purpose of paying for said structure. Any

alleged misappropriations of funds by the state or federal highway departments cannot be reached in a suit of this character against a county.

*Reversed and dismissed.*