[No. 21445.    Department One.    December 13, 1928.]

McPHERSON BROTHERS COMPANY, *Respondent*, v. DOUGLAS COUNTY, *et al., Appellants.*[1]

[1]Reported in 272 Pac. 983.

*Frank B. Malloy, O. R. Hopewell,* and *Hartman & Hartman,* for appellants.

*W. C. Gresham* and *Peter McPherson,* for respondent.

BEALS, J.—Sometime prior to the institution of this action, defendant Douglas county instituted proceedings for the condemnation of a right of way across a tract of land owned by plaintiff, for the purpose of establishing a public highway leading to a bridge then being constructed over the Columbia river.

The superior court having entered an order of necessity in the condemnation proceeding, the respondent therein (the plaintiff in this action) obtained from this court a writ of certiorari directing the superior court to certify for review the records and files in the condemnation case, for the purpose of enabling this court to determine the legality of the order of necessity. While the latter matter was pending here on the writ of certiorari, and, of course, before the ascertainment of the amount of compensation due the owner of the land, the county, without plaintiff's consent, entered upon plaintiff's property and proceeded to construct the road, the right of way for which it was seeking to condemn.

Plaintiff warned the county's agents and employees off its premises, and, upon their refusal to cease work thereon, brought this action for the purpose of procuring an injunction restraining the defendants from going upon plaintiff's land and proceeding with the construction of the road across the same, until the right

so to do should be obtained in the manner provided by law.

In its petition plaintiff alleged a joint trespass by both defendants, it appearing on the trial that the defendant Okanogan-Douglas Inter-County Bridge Company, a corporation, was then engaged in building the bridge across the Columbia river as an approach to which the defendant Douglas county was seeking to build the road across plaintiff's property, of which plaintiff complains. Plaintiff was denied a temporary restraining order, but procured an order to show cause, whereupon defendants promptly filed their answer, and by agreement the matter was finally heard on the merits and submitted to the court for judgment on the return day of the order to show cause.

In their answer defendants admit that defendant Douglas county, through its employees and without plaintiff's consent, commenced to build a road across plaintiff's property, that plaintiff notified the county to remove from its property and to desist from further work thereon, and that defendant did not desist, but continued in the construction of the road. Defendants further pleaded the pendency of the condemnation proceeding, and that the county was diligently prosecuting the same. They also alleged that the county had worked only upon the right of way which it was seeking to condemn, and that the construction of the road which it was endeavoring to build was of great importance to the public at large, and that a complete and adequate remedy at law was available to plaintiff.

At the close of the trial, the court granted plaintiff's prayer for an injunction and entered a decree enjoining defendants from in any manner trespassing on or entering upon plaintiff's property, but provided therein that the injunction should in no manner interfere with the prosecution by the defendant county of the

condemnation proceeding. From this decree defendants appeal.

Respondent relies upon Article 1, § 16, of the constitution of the state of Washington, which provides, *inter alia,* that:

"No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . ."

Appellants contend in the first place that the acts of Douglas county, in entering upon respondent's property pending the trial of the condemnation proceeding, "did not constitute trespass under the circumstances"; that injunction does not lie to restrain such acts pending the condemnation proceeding; and last, that the road having been completed and the alleged trespass having thereby become an accomplished act, respondent should have been relegated to its remedy at law.

It is true that the power of eminent domain is inherent in the state, and is an attribute of sovereignty. As was well said by Judge Chadwick in the case of *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820, the state, in taking private property for a public use, acts in its sovereign capacity, and

". . . goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong and presumptively for the public good."

This principle, however, cannot be invoked by the state save when the latter is proceeding in accordance with law and along constitutional lines. In the case now before us, the county knew and recognized respondent's ownership of the land across which it desired to construct a road. It affirmatively alleged this ownership in the petition which it filed, seeking con-

demnation of the right of way which it desired across respondent's property.

If the filing of a petition for condemnation justifies the authority seeking to exercise the right of eminent domain in anticipating the consummation of the procedure provided by law for the exercise of the extraordinary right which it invokes, and authorizes it to enter upon the land and construct the improvement which it desires to make, against the will of the owner, and prior to the payment of just compensation to him, as provided by the constitution of our state, the manifest purpose of the constitutional provision, above quoted, would be entirely subverted and the fundamental rights of the citizen violated. The convenience of the public is indeed a matter of importance, but the rights of the individual citizen, as guaranteed by the constitution of our state, are of even greater importance, and the speedy use of a convenient way of access to a bridge is achieved at too dear a price if gained at the expense of the fundamental rights of any citizen.

Whether or not the acts of appellant county constituted a trespass in the same sense of the word that the same acts would have been a trespass if committed by a private party, is immaterial. The acts of appellant in going upon respondent's land were unlawful and in violation of respondent's constitutional rights, and, if upheld by the courts, would justify any agency vested with the power of eminent domain in entering into possession of the property, which it seeks to condemn, over the protest of the owner, and converting the same to the desired use immediately upon filing a petition in condemnation. Such a theory is manifestly against the provision of our constitution above quoted.

Appellants contend that in any event the in-

junction granted by the trial court should have been suspended in its operation until the close of the condemnation proceedings, and cite certain instances in which this procedure was followed.

In a proper case such a suspension of the injunction would be entirely regular. An examination of the cases cited by appellants discloses the fact that in most of them the improvement was made, or at least initiated, without objection on the part of the land owner.

In our opinion the cases cited are easily distinguishable from the case at bar. The case of *Colby v. Spokane,* 12 Wash. 690, 42 Pac. 112, however, cited by appellants, requires some discussion. That action was instituted for the purpose of obtaining an injunction restraining the city of Spokane from proceeding further in the work of laying a pipe-line to be used as part of the system for supplying the city with water. A restraining order was issued and served, together with a notice that at a time therein named application would be made for a temporary injunction. Upon the return day both parties appeared, and the city filed an answer containing denials and an affirmative defense to the effect that proceedings were pending in which the condemnation of the land in controversy was sought. The application for a temporary injunction was denied and an order made dismissing the action, from which plaintiff appealed.

The court commented upon the unsatisfactory state of the record, the transcript being deficient, and assumed, for the purposes of the opinion, that the plaintiff submitted the action without evidence. This being the case, it was held that the denials of plaintiff's ownership of the land contained in defendant's answer were sufficient, in the absence of testimony, to justify the dismissal of the action.

The court continues, however, and states that the

remedy by injunction is to a certain extent within the discretion of the trial court, and that, under all the circumstances, from the record before it, this court would not say that the injunction sought by plaintiff was improperly denied. As we read this decision, it is not an authority which requires the reversal of the judgment of the trial court in the case at bar.

On the other hand, this court, in a long line of cases, has held that the provision of the constitution, above quoted, means just what it says, and that the rights of a land owner to possession of his property shall not be infringed until the statutory method provided for the divesting of his title has been completed and the compensation fixed by a jury has been paid, either to the owner or into court for his benefit.

Probably, the leading case in this jurisdiction upon this question is the case of *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385, which was an original application to this court for a writ of review, in which was sought a review of a judgment of the superior court permitting the construction of an elevated trestle in front of relator's property, upon the filing of a bond to pay any damages which might result from the construction thereof. This court, speaking through Judge Dunbar, says:

"In *Peterson v. Smith*, 6 Wash. 163 (32 Pac. 1050), it was held that under § 16, art. 1, of the constitution, private lands could not be appropriated by a county for road purposes unless the amount of damages was ascertained in court in a proceeding instituted for that purpose; and a statutory law invading this right was pronounced unconstitutional. It was said that under the constitutional guaranty the owner of the land appropriated could not be compelled to present a claim for damages, but that he could remain quiet and be sure that before his property was condemned the county must ascertain his damages, and either pay it to him or pay it into court for his benefit, and that the

amount of his damages must be ascertained in a court in a proceeding instituted for that purpose, and in which the defendant could appear and make his showing if he so desired. This has been the uniform holding of this court on this constitutional provision whenever it has arisen. It is a plain, specific right guaranteed by the constitution to the citizen, and must be respected.''

The following decisions of this court are also in point: *Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161; *Peterson v. Smith,* 6 Wash. 163, 32 Pac. 1050; *Olson v. Seattle,* 30 Wash. 687, 71 Pac. 201; *Hart v. Seattle,* 42 Wash. 113, 84 Pac. 640; *Fry v. O'Leary,* 141 Wash. 465, 252 Pac. 111.

In the last place, appellants contend that the improvement having been completed, an injunction should not issue, and that respondent should have been relegated to its remedy at law.

A complete answer to this proposition is that the road was not completed. Neither do we think that a premium should be placed upon an unlawful and deliberate invasion of the rights of a land owner by so rewarding the wrongful acts of appellant county in entering upon respondent's land without warrant of law. The agents of appellant county admitted that they entered upon respondent's land without permission. The work of road construction was commenced on a Saturday, was continued over Sunday, extra teams being put on, and was pressed toward completion as rapidly as possible, until the issuance of the temporary injunction.

While it is true that, in certain cases where the work complained of has been completed, it has been held that an injunction will not issue and the property owner will be left to his remedy at law, the cases laying down this principle, which have been called to our attention, do not present a state of facts such as is now before

us, where it is evident that an attempt was made, by taking advantage of a Saturday and Sunday, when courts would not be open to respondent, to obtain such a start on the work that it could be rushed to completion before a restraining order or a temporary injunction could be procured.

We do not feel that such malevolent industry should be rewarded. The regularly constituted officers of the state or its several subdivisions, in instituting proceedings whereby the title of citizens to their property is to be divested, should be most careful to see to it that the rights of the land owner are at all times protected, and that the procedure outlined by law is scrupulously followed.

Appellant Okanogan-Douglas Inter-County Bridge Company urges that at least the action should have been dismissed as to it, and that the judgment of the trial court, in so far as it is concerned, should be reversed. As counsel for appellants admit, whether or not the action is dismissed as to the bridge company, is of very little practical importance. Under all the circumstances of the case, we are not inclined to modify the judgment of the trial court in this particular.

The decree appealed from is affirmed.

FULLERTON, C. J., TOLMAN, and MITCHELL, JJ., concur.