[No. 33198. *En Banc.* February 8, 1955.]

THE STATE OF WASHINGTON, on the Relation of Don Eastvold, as Attorney General, Plaintiff, v. CLIFF YELLE, as State Auditor, Respondent.[1]

*The Attorney General* and *J. Arnold Cobley, Assistant,* for relator.

*Paul Sinnitt, Assistant Attorney General,* for respondent.

*Harold S. Shefelman, amicus curiae.*

ROSELLINI, J.—The attorney general filed a petition in this court praying for an alternative writ of mandate directed to the state auditor, commanding him forthwith to issue a warrant to the state highway department in the amount of the final offer made by the department to the defendants in a condemnation proceeding, in accordance with the provisions of RCW 8.04.090 [*cf.* Rem. Rev. Stat., § 894], or show cause why he should not be directed and compelled to do so. In his petition, the attorney general

[1] Reported in 279 P. (2d) 645.

alleged that an order of necessity had been issued in the condemnation proceeding, that no review was taken therefrom, and that there had been filed with the clerk of the court wherein the action was pending a certificate of the state's requirement of immediate possession and use. He further alleged that the auditor refused to issue the warrant necessary for the state to secure an order of immediate possession and use, thereby jeopardizing progress of the highway program of this state. Prospective damage to the state if the auditor refuses to issue such warrants in the future was also alleged. Based on this petition, an alternative writ was issued.

In his return, the auditor set up as the basis for his refusal to issue the warrant the invalidity of RCW 8.04.090.

The case presents the question: Can the state take possession of private property for public use without first making just compensation, the amount of which has been determined by a jury unless waived?

The state constitution, Art. I, § 16, amendment 9, provides:

". . . No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. . . ."

RCW 8.04.010 *et seq.*, under which relator demands that respondent issue a warrant, pertains to eminent domain by the state. RCW 8.04.090 reads:

"In case the state shall require immediate possession and use of the property sought to be condemned, and an order of necessity shall have been granted, and no review has been taken therefrom, the attorney general shall, before an order of immediate possession and use shall be made, file with the clerk of the court wherein the action is pending,

a certificate of the state's requirement of immediate possession and use of the land, which shall state the amount of money offered to the respondents and shall further state that such offer constitutes a continuing tender of such amount. The attorney general shall file a copy of the certificate with the state auditor, who forthwith shall issue and deliver to him a warrant payable to the order of the clerk of the court wherein the action is pending in a sum sufficient to pay the amount offered, which shall forthwith be paid into the registry of the court. The court without further notice to respondent shall enter an order granting to the state the immediate possession and use of the property described in the order of necessity, which order shall bind the petitioner to pay the full amount of any final judgment of compensation and damages which may thereafter be awarded for the taking and appropriation of the lands, real estate, premises, or other property described in the petition and for the injury, if any, to the remainder of the lands, real estate, premises, or other property from which they are to be taken by reason of such taking and appropriation, after offsetting against any and all such compensation and damages the special benefits, if any, accruing to such remainder by reason of the appropriation and use by the state of the lands, real estate, premises, or other property described in the petition. The moneys paid into court may at any time after entry of the order of immediate possession, be withdrawn by respondents, by order of the court, as their interests shall appear."

The power of eminent domain is inherent in sovereignty and does not depend for its existence on a specific grant in the constitution. The provisions found in a state constitution do not by implication grant the power to the government of a state, but limit a power which otherwise would be without limit. *State ex rel. Eastvold v. Superior Court*, 44 Wn. (2d) 607, 609, 269 P. (2d) 560 (1954).

It becomes necessary, therefore, to determine to what extent the language of Art. 1, § 16, amendment 9, limits the inherent power of this state in eminent domain.

Shortly after the constitution was ratified, this court extensively analyzed the quoted provision in *Lewis v. Seattle*, 5 Wash. 741, 32 Pac. 794 (1893), wherein an owner of land brought suit to recover compensation for land taken

for street purposes. The owner argued that municipal corporations are not entitled to offset benefits to land in determining the amount of compensation due. The court said:

"It is apparent that the exception relating to municipal corporations contained in the second clause must either apply to the rule of damages or it must have the effect of exempting such corporations from paying in advance. Appellant contends that it should apply to the rule relating to the ascertainment of damages, and argues that the decision rendered in *Brown v. Seattle,* [5 Wash. 35, 31 Pac. 313] (1893), in effect decides that the city may deduct benefits, and that it should be permitted to do so under the weight of the authorities, there being no legislation on the subject. In that case the court held that damages, which would result to adjoining property by the grading of a street, must be paid for in advance. There was no attempt to discriminate between the appropriation of a right-of-way and a taking or damaging for any other municipal purpose in relation to the right to prepayment, nor can one be drawn from the authorities, for the appropriation of a right-of-way for a street has uniformly been recognized as a taking by the courts of the country regardless of where the fee remained."

And, in further answer to the owner's argument that it was not the intent of the framers to allow municipal corporations to offset benefits, but rather to exempt them from the necessity of prepayment, substantially the interpretation urged by the relator in the case at bar, the court said:

"But it is apparent that to give this exception the effect of exempting municipal corporations from making compensation at or before the time of the appropriation, *it must either override the first clause, prescribing the time of payment, which purports to lay down an absolute rule and contains no exception, or a distinction must be drawn between an appropriation of a right-of-way and a taking for any other municipal purpose.* The first clause, standing by itself, requires payment to be first made where property is taken or damaged by any corporation for any purpose.

"We know of no case holding that an appropriation of land for a street is not a taking within the meaning of such a provision." (Italics ours.)

The court pointed out further ambiguities which would

arise if the construction urged by the owner were adopted, and concluded:

"By construing this constitutional provision as requiring payment to be first made in all cases, and giving the second clause the effect of laying down a rule of damages as to the appropriation of a right-of-way by corporations other than municipal, all conflict between the two clauses is avoided, and full force is given to each and every part. Such is the best sustained construction it can receive."

The interpretation placed upon the constitutional provision in the *Lewis* case has never been rejected or criticized by this court. The eminent domain statutes now provide for the offsetting of benefits by the state and cities. (See RCW 8.04.080, 8.12.190.)

The right of an owner to have his property evaluated by a jury and compensation paid to him before it is taken has been many times affirmed. It was so recognized in *Peterson v. Smith*, 6 Wash. 163, 32 Pac. 1050 (1893), wherein a statute authorizing the ascertainment of damages by county road viewers was held unconstitutional; and in *Askam v. King County*, 9 Wash. 1, 36 Pac. 1097 (1894), the court in that case holding invalid a drainage law which failed to provide for the proper determination and payment of damages prior to the taking. An eminent domain statute which contained no provision for personal service of notice nor for assessment of damages by a jury was declared invalid in *In re Smith's Petition*, 9 Wash. 85, 37 Pac. 311, 494 (1894).

The *Peterson* and *Askam* decisions were reaffirmed in *Snohomish County v. Hayward*, 11 Wash. 429, 39 Pac. 652 (1895), and in *Seanor v. Board of County Com'rs*, 13 Wash. 48, 42 Pac. 552 (1895). In the latter case it was argued, as it is in this case, that to enforce the provision literally against the state would cause great inconvenience to the public. The court answered this argument in these words:

"While courts should always hesitate to pronounce a law unconstitutional which is manifestly enacted for the best interests of the country, yet it is their bounden duty to see that the provisions of the constitution are maintained inviolate, and that the right of the citizen to implicitly rely

upon its plain guaranties shall not be destroyed by construction."

Among the many other cases reasserting these principles are *Hansen v. Hammer*, 15 Wash. 315, 46 Pac. 332 (1896); *Adams County v. Dobschlag*, 19 Wash. 356, 53 Pac. 339 (1898); *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385 (1901); *Fry v. O'Leary*, 141 Wash. 465, 252 Pac. 111, 49 A. L. R. 1249 (1927); *McPherson Brothers Co. v. Douglas County*, 150 Wash. 221, 272 Pac. 983 (1928); *Little v. King County*, 159 Wash. 326, 293 Pac. 438 (1930); *State v. Superior Court*, 167 Wash. 334, 9 P. (2d) 70 (1932); and *State ex rel. O'Brien v. Brinker*, 169 Wash. 79, 13 P. (2d) 63 (1932).

In *State ex rel. Smith v. Superior Court, supra*, this court held that the giving of a bond by the appropriator does not satisfy the requirement of prepayment. In *McPherson Brothers Co. v. Douglas County, supra*, we said:

"If the filing of a petition for condemnation justifies the authority seeking to exercise the right of eminent domain in anticipating the consummation of the procedure provided by law for the exercise of the extraordinary right which it invokes, and authorizes it to enter upon the land and construct the improvement which it desires to make, against the will of the owner, and prior to the payment of just compensation to him, as provided by the constitution of our state, the manifest purpose of the constitutional provision, above quoted, would be entirely subverted and the fundamental rights of the citizen violated. The convenience of the public is indeed a matter of importance, but the rights of the individual citizen, as guaranteed by the constitution of our state, are of even greater importance, and the speedy use of a convenient way of access to a bridge is achieved at too dear a price if gained at the expense of the fundamental rights of any citizen."

In RCW 8.04.092, there is clearly an admission by the legislature that the amount paid into court is not necessarily just compensation, inasmuch as the property owner may elect to have a jury or court determine this question after the state has taken possession:

"The amount paid into court shall constitute just compensation paid for the taking of such property: *Provided,*

That respondents may, in the same action, request a trial by jury or by the court for the purpose of assessing the amount of compensation to be made and the amount of damages arising from the taking. . . ."

In support of his position, relator cites cases interpreting the United States constitution and various state constitutions which do not expressly provide that payment shall be "first made." We have examined the cases, but in view of this significant difference, we cannot consider them as authority for the interpretation of our constitution.

The relator and *amicus curiae* insist that the construction placed upon the constitutional provision in *Lewis v. Seattle, supra,* was improper and urge the court to reject that case and the many others which are in accord with it. They call the court's attention to the fact that Arizona and Mississippi have eminent domain provisions identical to our own, which provisions have been held not to require prepayment when the condemnor is a state or a municipal corporation.

In *Bugbee v. Superior Court,* 34 Ariz. 38, 267 Pac. 420 (1928), cited by the relators, the court upheld an eminent domain statute which, unlike ours, required the deposit in court of twice the amount of damages estimated by the court before possession could be taken. The court accepted the argument that the constitution was not intended to require prepayment by a county. In support of its conclusion, it cited *Lincoln County v. Brock,* 37 Wash. 14, 79 Pac. 477 (1905), which merely holds that a county is a municipal corporation and entitled to offset benefits as provided by the constitution. In this respect, *Lincoln County v. Brock* is entirely consistent with *Lewis v. Seattle, supra,* and affords no basis for holding that a municipal corporation is exempt from the necessity of making payment before taking possession.

The Mississippi opinion, quoted at length in the brief of *amicus curiae,* is *State Highway Comm. v. Buchanan,* 175 Miss. 157, 165 So. 795 (1936). This was an appeal by the highway department from a judgment in a condemnation suit, the appellant contesting the propriety of the amount of compensation awarded by the jury. Pending the appeal,

the appellant had begun construction on the condemned land, and the owner-respondent moved to dismiss the appeal under the rule that a party may not accept the beneficial part of a judgment and appeal from the part unfavorable to him. In a 3-3 decision, the court denied the motion, holding that, under the Mississippi constitution and the applicable statute, the state was entitled to take possession before making payment, *but not before the amount of just compensation had been determined by a jury.* Thus it will be seen that the Mississippi case cited by the relator supports his argument in part only, inasmuch as he urges that our own constitution should be construed to exempt the state not only from the requirement of prepayment but also from the necessity of submitting to the jury, before the land is taken, the question of the amount of compensation due. Furthermore, the court in that case expressly recognized that the constitution and the statute in question, if read literally, required prepayment, but felt obliged to follow an earlier decision holding that the "intent" of the constitution was satisfied if payment was "insured." We do not agree that "to pay" means "to insure payment." Referring to the earlier case, the Mississippi court remarked:

"And the court thereupon simply followed a maxim of legal construction as old as any of the books of the law that when, and to the extent that, the reasons of or for a rule disappear as regards a particular legal situation, the rule to that extent also disappears as applicable to that situation. *Cessante ratione legis, cessat ipsa lex.*" (Italics ours.)

While we do not dispute the propriety of the maxim when applied to the common-law rules established by the courts, when applied to the constitution it is a novel doctrine of interpretation which this court is reluctant to adopt.

The court in the Mississippi case was strongly influenced by the public policy considerations which are pressed upon us in the case at bar. But to say that Art. I, § 16, amendment 9, was not intended to deny to the state the right to take possession before making a judicially determined just compensation would necessitate the overruling of a long line of well-reasoned cases. Furthermore, the result would

be a distortion of the express language of the provision. The change which the relator desires can be properly achieved only through an amendment to the constitution.

RCW 8.04.010 et seq. permits the state to acquire possession upon payment into court of the amount of its last offer, and provides for a jury determination of just compensation at a later date, at the election of the owner. Although in most instances eventual payment is assured, the property owner is denied his right to have "just compensation" judicially determined and paid before his property is taken.

■  We conclude that, under Art. I, § 16, amendment 9 of the state constitution, a property owner is entitled to a judicial determination of just compensation, and payment thereof, before the state can deprive him of possession under the power of eminent domain. This includes the right to a jury trial unless waived. RCW 8.04.090, inasmuch as it denies the owner these rights, is unconstitutional.

■  Mandamus will not lie to compel the auditor to issue a warrant under a statute that is unconstitutional. See *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101 (1911).

The peremptory writ is denied.

HAMLEY, C. J., MALLERY, SCHWELLENBACH, HILL, DONWORTH, and WEAVER, JJ., concur.

FINLEY, J. (concurring in the result)—Our state legislature has established a procedure relative to the condemnation and acquisition of property for rights of way and other purposes by the state, which provides considerable but somewhat inadequate standards of fair play or due process safeguards for the property owner. The legislation provides that, if the state requires immediate possession after an order of necessity (not appealed from), the attorney general, in the condemnation action, shall certify the requirement of immediate possession to the superior court, indicating the sum offered for the property by the state as a continuing and binding tender by the state. He

then causes a warrant to be issued by the state auditor, payable to the clerk of the court, in a sum sufficient to pay the amount offered by the state. The warrant is cashed by the clerk and paid into the registry of the court. The court orders the state to pay the full amount of any final judgment thereafter awarded to the property owner and further, by order, permits immediate possession to be taken by the state. Thereafter, the property owner may at any time withdraw the money paid into court, without prejudice as to the amount of a final judgment in the matter. (See RCW 8.04.090.)

Under the statutes, the property owner is entitled to demand a trial by the court, or a jury, to determine the final amount of the compensation for the property taken or damaged. If the court or jury award is in excess of the amount tendered, the state is bound to pay such excess with interest. Finally, the costs of the action are charged to and paid by the state. (See RCW 8.04.092.)

A somewhat comparable statutory procedure was approved by the supreme court of Arizona in *Bugbee v. Superior Court,* 34 Ariz. 38, 267 Pac. 420. The significant difference in the Arizona statutory procedure is the fact that thereunder the trial judge, without a jury, takes evidence as to *probable damages or compensation,* and thereupon determines or fixes the amount of *probable damages or compensation.* Furthermore, the Arizona statute requires that double the amount so fixed be paid into court. The *Bugbee* case, *supra,* not only upheld the Arizona statutory procedure, but Art. II, § 17, of the Arizona constitution (which is almost identical with our own constitutional provision) was held *not applicable to municipal corporations* in connection with the acquisition and immediate possession of property *for right-of-way purposes.*

The matter of prepayment of compensation does not seem to me to have been the basic question confronting the court in the early cases of *Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, *Lewis v. Seattle,* 5 Wash. 741, 32 Pac. 794, *Peterson v. Smith,* 6 Wash. 163, 32 Pac. 1050, *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385.

In the *Brown* case, *supra*, the questions were (1) whether a property owner was entitled to compensation for damages to his property resulting from a public improvement, when no part of his property was actually taken by the city, and (2) whether the only relief of such a property owner should be a common-law cause of action for damages. In the *Lewis* case, *supra*, the basic question was whether a deduction could be made (from the damages or compensation awarded) for special benefits accruing as a result of the public improvements. In the *Peterson* case, *supra*, the basic question was whether the amount of compensation could be fixed by road appraisers, as provided in a state statute, rather than by a jury, as specified in the state constitution. In the *Smith* case, *supra*, the question was whether the Seattle Electric Company, a public utility (obviously not a subdivision of state government), could post a bond for the payment of compensation to be awarded subsequently.

Except in the *Lewis* case, the foregoing questions were decided in favor of the property owners involved. In so doing, the early decisions of the court indicated, in language that is unquestionably broad and sweeping, that a prepayment of money was necessary for the protection of the property owners concerned, and that such prepayment was required by the state constitution. However, much, if not all, of this language was *dicta*, and to me the significant questions *now* are (1) whether the broad, sweeping language used in the above-mentioned early cases, relative to prepayment, was actually essential to the decisions therein reached, and (2) whether such broad and sweeping language would have been used by the court, if at that time a procedure had been established by the legislature providing reasonable protection, or standards of fair play, that is, due process safeguards for property owners in connection with the exercise of the sovereign right of eminent domain by the state and its subdivisions of government.

If legislation of the latter-mentioned type, comparable to that involved in the *Bugbee* case, *supra*, had existed, it is

my best judgment, and I am strongly convinced, that the court in the early Washington cases could, and probably would, have decided the basic questions involved in the same manner, but without being compelled to advert to the broad, sweeping language with reference to the matter of prepayment of compensation or damages.

In the *Lewis,* case, *supra,* it is said that the constitutional language, "other than municipal," clearly creates an exception in favor of *municipal corporations,* relative to the application of Art. I, § 16. But the effect of the exception is restricted to the matter of deduction of benefits from the amount of compensation or damages awarded to property owners. As mentioned above, I believe that in the *Lewis* case the question of basic concern to the court was whether the exception as to municipal corporations permitted the latter to deduct from a condemnation award the value of benefits to a property owner's land resulting from public improvements. In the *Lewis* case, the argument was advanced to the court that the exception relative to municipal corporations could apply *either* to (a) prepayment of compensation or damages, *or* to (b) deduction of benefits, *but not to both* matters. It was urged *by counsel for the property owner* that the constitutional language made sense only if applied to the matter of prepayment of compensation or damages. In other words, the suggested interpretation supported the property owner's basic contention in the case that a deduction of benefits could not be made, and that there was no exception in favor of municipal corporations as to the matter of benefits. Apparently, the court accepted the argument that the exemption as to municipal corporations could apply to one or the other, but not to both (a) prepayment and (b) deduction of benefits, and, in the process, concluded that the exemption only applied to the latter. It seems to me that the argument offering a choice of one or the other of two alternatives, and its acceptance by the court, was purely fortuitous and somewhat unfortunate, in so far as the incidental, not germane, question of prepayment of compensation was concerned. In

other words, the language referring to the matter of prepayment was *dicta*.

The language contained in Art. I, § 16, of our state constitution, as revised by amendment 9, does not necessarily have to be interpreted in the restricted manner which respondent state auditor contends is required by statements of this court in the *Brown, Lewis, Smith* and *Peterson* cases, *supra*. In connection with a condemnation and acquisition of property for *right-of-way* purposes (as distinguished from other purposes), the phrase, "other than municipal," can, and I think should, be regarded as a full and complete exemption of municipal corporations from the two requirements of Art. I, § 16 (amendment 9) of the constitution, (1) that full compensation *be paid in advance of possession,* and (2) that the value of benefits flowing from contemplated public improvements may not be deducted from total compensation to which a land owner is entitled for the taking or damage to his property. *Bugbee v. Superior Court, supra; Hinds County v. Johnson,* 133 Miss. 591, 98 So. 95; *State Highway Comm. v. Buchanan,* 175 Miss. 157, 165 So. 795. In the respect just indicated, my views are in conflict with those of the majority. However, other considerations cause me to concur in the result reached by the majority. I refer to Art. I, § 3, of the state constitution, and the requirements inherent therein. It reads: "No person shall be deprived of life, liberty, or property, without due process of law."

Respondent contends that the existing eminent domain statutes do not provide reasonable or adequate due process safeguards for property owners. Considerable emphasis is placed upon the lack of reasonable notice to property owners prior to the entry of a court order "granting to the state the immediate possession and use of the property described in the order of necessity." RCW 8.04.090. Although this apparently overlooks the ten-day notice to property owners involved in the entry of an order of necessity (which, considering the circumstances, might be too short a period to constitute adequate notice), there is much to be said as to the necessity of reasonable notice to a property owner

prior to the possession of his property, and his ouster therefrom, by the state.

However, in my opinion, there are more serious due process defects in the existing legislation. The amount of the state warrant, and, consequently, the cash amount paid into the registry of the court, is determined by the amount of the offer made by the state for the property of the condemnee. The amount of the state's offer is not determined judicially, or after the taking of evidence as to *probable value* of the property, as in the *Bugbee* case. The amount of the offer is determined by an official or officials of the executive department. The amount of the offer may or may not bear some reasonable relation to *probable value.* It might be substantially less than the amount of a final judgment in the condemnation proceeding. There is no requirement, as in the *Bugbee* case, that *double the amount* of the *probable value* be paid in cash into court *as security* for the property owner. Although, under the existing legislation, cash equal to the offer of the state is paid into court, the property owner has no security other than the credit of the state (or the credit of some other municipal corporation, as the case may be) for any difference between the amount of the state's offer and the amount of the final judgment in the eminent domain proceedings. It is certainly to be hoped that the credit and good faith of the state are and will be in good condition in the future, but not too long ago the credit of the state and other subdivisions of government was subject to some fluctuation, and funds were not always available for the discharge of solemn obligations.

In my judgment, the defects just mentioned significantly distinguish our existing legislation from that involved in the *Bugbee* case. These defects render our legislation invalid constitutionally (Art. I, § 3, state constitution), strictly upon the ground of a lack of acceptable due process safeguards for property owners in eminent domain proceedings, where the state is seeking immediate possesison of property for *right-of-way* purposes. The defects in the eminent domain procedure, as I see them, may be corrected by appropriate legislation, without the necessity of constitutional amendment.

On the basis of the reasons I have indicated herein, I concur in the result reached by the majority that the writ must be denied.