HELM & NORTHWESTERN RAILROAD COMPANY v. E. F. TURNER
ET AL.

[42 South. Rep., 377.]

EMINENT DOMAIN. *Appeal. Waiver. Constitutional law. Const.* 1890,
   sec. 17. *Code* 1892, §§ 1693, 1696.

Under the constitutional provision that private property shall not
   be taken or damaged for public use except on due compensation
   being first made to the owner and the statutes regulating pro-
   cedure in eminent domain cases, an appeal by the applicant to the
   circuit court is properly dismissed where he deposited with the
   clerk of the court the amount of the award, allowed it to be paid
   over to the owner, and took possession of the land condemned,
   such acts constituting a waiver of the right of appeal.

FROM the circuit court of Bolivar county.

HON. A. McC. KIMBROUGH, Judge.

The Helm & Northwestern Railroad Company, the appellant,
was the applicant in eminent domain proceedings against Turner
and others, appellees, and appealed from the eminent do-
main court to the circuit court. At the ensuing term
of the circuit court, that court, on the motion of appellee,
Turner, dismissed the appeal. The railroad company thereupon
appealed to the supreme court. The appellee's motion to dismiss
the appeal was based upon the admitted facts that after the rail-
road company had taken appeal from the court of eminent
domain, it deposited the amount of the jury's award with the
clerk of the circuit court, and took possession of the land; thus,
as appellees claimed, precluding the company from exercising
further the right of appeal. The opinion states the facts, and
contains in full the statutes on which the decision is based.

*Charles N. Burch,* and *Mayes & Longstreet,* for appellant.

The sole point for decision here is whether a railroad com-
pany, which has obtained a judgment condemning certain land

for its use in eminent domain proceedings, loses the right of appeal from the judgment of the eminent domain court if, at any time before or after appeal is prosecuted to the circuit court, it pays to the landowner or to the clerk of the proper court the amount of the jury's award in the condemnation proceedings. Code 1892, chapter 40, the law in force at the time of these proceedings, is not altogether free from confusion in some of its provisions. A careful examination of chapter 40 will demonstrate that the payment to the landowner or to the clerk of the circuit court of the amount of compensation fixed by the jury, does not preclude the applicant from an appeal, no matter when such payment is made. In this especial case, however, we call attention to the fact that the railroad company has the right to prosecute the appeal because the appeal had been perfected before the company had paid the amount of award to the clerk of the circuit court for the landowner, and before the landowner had accepted payment of the same from the clerk.

Fundamentally a railroad company's right to condemn land under the aforesaid eminent domain chapter rests upon the probative fact that the land is needed for public use. It is, therefore, the policy of the law that where the right to so take property is manifest, it is at once to the interest of the public that the use be consummated immediately. In order to provide for the immediate dedication of the property to public use, Code 1892, § 1693, and other like statutes, were enacted. But as the landowner's property may not be taken without compensation, the statutes providing for entry and use of the land, must provide also for this compensation first to be made. And in connection therewith it was competent for the legislature to grant the right of appeal to either party as set forth in Code 1892, § 1696, providing that appeal might be taken to the circuit court by executing bond and other formalities. Hence, any one in interest should have the right of appeal. Section 1696 is consistent with section 1693, and creates rights entirely distinct from the privileges of section 1693. As the right of appeal is

provided to afford opportunity to either party in interest to
test the question of proper award, chapter 40 clearly gives the
right to such appeal without regard to payment or nonpayment
of the award.

The only limitation upon the applicant under the above
chapter is that he shall not enter upon the land until he shall
have afforded to the landowner opportunity for compensation
by proper order of court or by the landowner's voluntary actions
after termination of litigation. It has been repeatedly held
that statutes providing for payment of award into court, and
that on such payment the applicant shall have the right of
entry, are constitutional. And it is patent that the weight of
authorities in the United States is to the effect that the pay-
ment of the award is in no wise connected with, or affects, the
right of appeal. *Cleveland Railroad Company* v. *Newlin,* 72
N. E. Rep., 257; *Cleveland Railroad Company* v. *Hayes,* 74
N. E. Rep., 531; *Lowe* v. *Concord Railroad Company,* 3 Atl.
Rep., 739; *Weyer* v. *Milwaukee Railroad Company,* 57 Wis.,
329 (15 N. W. Rep., 481).

In eminent domain proceedings the applicant has three
courses open to him. He may pay the award to the landowner
or into court, and take possession without appeal; or he may
appeal without payment of the award either to landowner or
court, in which case he acquires no right of entry; or, third,
he may appeal, pay the amount of award, to the landowner
or into court, and enter.

Where the landowner appeals, if he withdraws the money
paid by the applicant into court, he is not thereby precluded
from further prosecution of the appeal; but, on the hearing of
the appeal, may, if the amount of award is increased, credit
such payment, and the condemning applicant shall pay the
difference. But if the landowner has withdrawn the amount
of award deposited by the applicant, then, if on hearing of the
appeal, the award of the eminent domain court is reduced, the
landowner shall refund the amount of reduction, and shall pay

interest on the same for the period he has used the money.
10 Am. & Eng. Ency. Law (2d ed.), 1188, subsec. "B;" *Reisner* v. *Railroad Company,* 10 Am. & Eng. Railroad Cases, 155 ;
*Walson* v. *Railroad Company,* 57 Wis., 332 ; *Ascott* v. *St. Paul Railroad Company,* 21 Minn., 322.

In nearly all eminent domain laws of the United States there
are provisions for some expeditious and preliminary ascertainment of values and assessment of damages by some summary
procedure, with a further provision for consideration by a
higher tribunal having general jurisdiction of the whole controversy and of all questions of law and fact. In Mississippi,
now, the law is that the justice of the peace shall summon a
jury of freeholders, and in a summary way an ascertainment
be had of values and assessment of damage. But the justice
of the peace is in such proceedings merely a ministerial officer,
having no judicial functions. *Sullivan* v. *Railroad Company,*
85 Miss., 649 (s.c., 38 South. Rep., 33). If such be true,
then it is important that the right of appeal should be liberally
granted and construed in order that any party in interest may
have opportunity to present in a court of general jurisdiction
all questions of law and fact for proper adjudication.

Counsel for appellees insist that if any of the code sections
in chapter 40 should be construed as authorizing the taking and
using of the land by applicant while applicant is still contesting the right to the award, such construction would be violative
of the present state constitution, art. 3, sec. 17, because such
section provides that due compensation must be "first made to
the owner;" and they further insist that our constitution
differs from other state constitutions in regard to the taking
for public use in that payment of compensation is in this state,
required to be "first made." We have, however, examined some
of the other state constitutions in which the provisions for the
taking of private property for public use are very similar to,

and in some instances identical with, the provisions of our own State constitution on that subject.

Georgia's constitution provides for compensation to be first made before taking of the property for public purposes. And the supreme court of Georgia has held that a legislative provision authorizing a railroad company to enter upon land upon deposit in court of the amount of the jury's award, is in compliance, with the constitutional requirement, and that such a payment into court does not bar appeal by the railroad company. *Oliver* v. *Railroad Company,* 83 Ga., 263. In Alabama the provision of the constitution with reference to the condemnation of private property for public use is as follows: "But just compensation shall, in such cases, be first made to the owner." Yet the supreme court of Alabama holds that a deposit or payment into court, or tender to the landowner, is a compliance with the constitutional requirement, and that the railroad company may appeal whether the landowner accepts or rejects the deposit. 94 Ala., 488, and cases cited. *M. & G. Railroad Company* v. *A. M. Railroad Company,* 87 Ala., 520; *Cooper* v. *Railroad Company,* 85 Ala., 106. In Indiana, under its constitution of 1851, it is provided that in eminent domain proceedings, before the taking, compensation shall be "first assessed and tendered." In fact, the phrase, "compensation first made to the owner," is the subject of frequent judicial constructions long prior to the adoption of our constitution of 1890. In Cooley's Constitutional Limitations (7th ed.), top p. 216, note 2, a list of states is shown whose constitutions contain this provision; yet in every case machinery is provided for the exercise of the right of eminent domain, and appeals provided for.

It will thus be seen that nearly an unbroken line of authorities is to the effect that notwithstanding the requirement that compensation shall first be made, the courts of the different states hold that a willingness to pay on the part of the applicant in condemnation, evidenced by a real tender or unrestricted

payment into court, will thoroughly satisfy the constitutional requirements. For authorities explaining the requirements for payment "first to be made," see 15 Cyc., 776.

In some of the states the eminent domain statutes grant the privilege of appeal, notwithstanding the payment of the award into court, and in nearly all the decisions of the courts of such states it is held that the right of appeal is separate and distinct from the right of entry, and that the right of entry may be secured by payment or willingness to pay, evidenced by a tender or a payment of award into court.

Justice SHARKEY, in *Thompson* v. *Grand Gulf Railroad & Banking Company*, 3 How. (Miss.), 246, stated that a "judgment" for the amount of the award was not "compensation," and that the giving of "a bond" to the landowner was not payment of the compensation. It was, accordingly, for the purpose of meeting this constitutional construction that the eminent domain laws of Mississippi were thereafter enacted, providing that the payment shall be made in cash to the landowner or into court, prior to the entry upon the land. But after such payment, or deposit with the clerk of the circuit court, of the jury's award, the applicant should have the right to enter upon the land, even if appeal be taken by the landowner. For otherwise it would be impossible for the legislature ever to provide for a right of entry until after an actual termination of all litigation, and the appropriation of property for public use might be indefinitely delayed. A delay occasioned by appeals, reversals and remands, mistrials and further appeals might continue for years, and operate to cause absolute abandonment or destruction of great public enterprises. It was, therefore, wisely intended by the framers of our constitution that there should be a proper adjudication of the rights of applicant and landowner, and at the same time an allowance that the public work proceed without delay.

In the light of the above decisions we respectfully submit that the case should be reversed and remanded.

*Alexander & Alexander,* and *George B. Power,* for appellees.

The code chapter on eminent domain does not authorize the applicant to appeal to the circuit court after the applicant has paid and the landowner has accepted the award of the jury of the eminent domain court, and after the applicant has appropriated the land to the public use. Appeal is not a matter of right, but entirely dependent upon statute. The legislature, in granting a right of appeal in eminent domain cases, had constantly in mind the constitutional requirement of payment of due compensation before the condemned property might be taken and used. The language of the code sections shows this. Code 1892, § 1692, reciting the form of judgment and constituting the source and limit of the applicant's right to use the land, distinctly says that on payment of the award applicant may then enter upon and appropriate the land to public use. From this code section it is apparent that unconditional payment of the award is an absolute prerequisite to entry by applicant on the land. Code 1892, § 1693, is, if possible, even more explicit, for it provides that, after judgment, if the applicant pay or tender to the landowner the award, and pay the costs, the applicant is entitled to enter on the land. Now, the judgment of the special court, where entry is made, is the source of applicant's right, vesting in the applicant title, just as would a deed from the landowner, upon applicant's payment of the award. An appeal by the owner may possibly result in a larger award, but it does not supersede nor divest title, for the title has passed to the applicant without recall. The former owner can never get back his land, no matter what may be the outcome of the case on appeal. When the applicant pays the award and costs, and secures the use of the land, there is an end of the matter as affects the title, and so far as any further action by applicant may be concerned. The payment of the award into court is not for the purpose of its abiding outcome of litigation on appeal, for the statute expressly says that the payment is for the landowner.

It would be intolerable if a corporation could pay the award in the case, enter upon and use the land, and then, by appeal and possible continuances from court to court, deprive the helpless owner for a long period of the sum due him, when the constitution says the payment is a prerequisite. Code 1892, § 1696, gives the only right to appeal, conditioned solely on giving cost bond. But payment is the price of entry on the land. Section 1696 recites that if the appeal be by the landowner it shall not operate as a supersedeas nor shall the applicant's right to enter and appropriate be delayed. This provision was not inserted at haphazard. The expression of the fact that the landowner's appeal shall not supersede, implies necessarily that the applicant's appeal supersedes. Else why the distinction? The clause means that if the landowner is not satisfied and appeals, the applicant's rights provided for in section 1693 on its unconditional payment shall not be delayed. The fallacy of appellant's position is that it has viewed payment of the award into court to be litigated for, as a substitute for payment, and then viewed such payment, even when accepted, as a condition not of entry but of appealing. We say accordingly that the statutes make no provision for appeal by applicant after payment, acceptance and entry.

The payment of the award, its acceptance and the entry and expropriation of the land, constituted a waiver of all rights of appeal. The agreed statement of facts present the question whether applicant is bound by the payment and entry. It is immaterial whether the court dismissed the appeal or directed a verdict in the circuit court for the amount already paid and accepted. When the court saw that the question of award was settled by jury, and the judgment satisfied, dismissal was proper. The propriety of this will appear from our discussion of the next proposition.

If Code 1892, § 1696, be construed as authorizing the taking and using of land by applicant while applicant is still contesting the right to the award by appeal, such construction would be

violative of our state constitution, art. 3, sec. 71, declaring that due compensation must first be made to the owner. For the right to due compensation cannot be met by payment of a sum into court to be subsequently litigated for by the owner. It is evident that the money must stand for the land. The owner, in losing his land to applicant, should immediately receive the award, and his ownership of the award should be at once as absolute and unconditional as his .former ownership of the land. Some state constitutions provide for payment or security or deposit of the award to be for the benefit of the owner, but our state constitution requires compensation to be "first made."

In *Hughes* v. *Mississippi Levee Board,* an unreported case of a few years back, this court, in superseding a decree dissolving an injunction, refused to dispense with necessity of prior compensation, even where an overflow of the great Mississippi delta was threatened and the delay in closing a levee crevasse would probably cause public calamity. Note the words of Chief Justice SHARKEY in *Thompson* v. *Grand Gulf Railroad Company,* 3 How. (Miss.), 240, in reference to the construction of constitutional: "The word 'first' used in the bill of rights cannot be regarded as useless, nor are we at liberty to suppose it was inserted without design or by accident." In this connection *Levee Commission* v. *Dancy,* 65 Miss., 335 (s.c., 3 South. Rep., 568), is in point, where the court stated it was illegal to substitute for defendant's right to due compensation, as condition of divestiture of title, a right to institute proceedings, to get the compensation in three months, or any other delayed period of time. In *Missouri Pacific Railway Company* v. *Gruendel,* 44 Pac. Rep., 439, the court of Kansas held that notwithstanding appeal, the landowner, on the tender to him of jury's award, has a right to accept same as an intention of the condemning corporation not to prosecute further the appeal, and of its willingness to submit to the commissioner's award. This court further held that the payment of the award was a

settlement of all controversy between parties.   See, also, *Trust Company* v. *Harless,* 131 Ind., 446 (29 N. E. Rep., 1062), and *Jersey City* v. *Hamilton,* 56 Atl. Rep., 670, and 15 Cyc., 946.

Argued orally by *J. C. Longstreet,* for the appellant, and by *C. H. Alexander,* for the appellees.

MAYES, J., delivered the opinion of the court.

On the 21st of July, 1905, the Helm & Northwestern Railroad Company made application for condemnation of a strip of land to be used as a right of way for said company.  The land sought to be condemned was the property of appellees.  The proceedings leading up to the organization of the court of eminent domain seem to conform to all the requirements of the statute, and on the 29th day of July, 1905, the court met, viewed the land sought to be condemned, heard the evidence, the jury were instructed by the court, and the value of the land sought to be condemned assessed at something over $4,000; the jury giving to each of the defendants such proportion of said sum as they found the land belonging to him was worth.   There is no complaint in any part of the record as to the regularity of the proceedings leading up to the condemnation; the only complaint being as to the amount allowed by the jury.   On the 7th day of August, 1905, appellants executed a bond, payable to appellees, in the sum of $300, in conformity to section 1696, Code 1892, and prayed an appeal to the next term of the circuit court.   When the circuit court convened, the defendants on the 17th day of November, 1905, made the following motion; that is to say: A motion was made by the defendants to dismiss plaintiffs' appeal for the reason that the amount awarded them by the eminent domain court had been paid into the hands of the clerk of the circuit court by the plaintiff for landowners, and was paid by the clerk to defendants, and the plaintiff thereupon entered the land and appropriated the same to its use for the

right of way, and this, it is claimed, was a settlement of the case. On hearing of this motion the following facts were agreed to, viz.: "It is agreed by counsel for plaintiff and counsel for defendants that it is a question of law, and it is agreed that $4,004, the award of the eminent domain court, was paid into the hands of the circuit clerk by the railroad company for defendants, as provided by section 1693 of the code of 1892, on the 19th of August, 1905. The clerk paid the money to the landowners on the 16th day of November, 1905. After the payment of the railroad company to the clerk, they proceeded to enter the land and appropriate the same for its right of way." On the hearing of this motion, the court sustained it and dismissed the appeal, to which action of the court appellant excepted, and prosecutes an appeal to this court, assigning as error the judgment of the court in dismissing the appeal.

Section 17, article 3, of the constitution of the State provides that "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof in a manner to be prescribed by law." It will be noticed that this section requires that due compensation be first made before the property can be taken or damaged for public use. Following out the further provision in this section of the constitution, which says that private property shall not be taken, etc., except on due compensation being first made to the owner or owners thereof in a manner to be prescribed by law, the legislature has prescribed the manner in which private property may be taken for public use in chapter 40 of the code of 1892, on the subject of eminent domain. By sec. 1693 it is provided that: "Upon the return of the verdict and entry of the judgment, if the applicant pay the defendant whose compensation is fixed by it, or tender to him the amount so found and pay the costs, he or it shall have the right to enter in and upon the land of such defendant so condemned, and to appropriate the same to the public use defined in the application; and in case the defendant and his attorney absent themselves from the

court, the payment may be made to the clerk of the circuit court for him, and such officer shall be responsible on his bond therefor and shall be compelled to receive it." By this section of the code the applicant is given the right to enter upon the return of the verdict and entry of the judgment, if he pay the defendant the compensation fixed by the verdict, or tender him the amount so found and pay the costs, and by the same section it is also provided that, if the defendant and his attorney be absent from the court, payment may be made to the clerk of the circuit court for him. But this section clearly contemplates that there shall be no entry upon lands by the applicant until he shall have first paid the damages awarded by the verdict of the jury. Section 1696, providing for appeals, says: "Every party shall have the right to appeal to the circuit court from the finding of the jury in the special court by executing a bond with sufficient sureties, payable to his adversary, in a penalty of three hundred dollars, conditioned to pay all costs that may be adjuded against him, which bond shall be given within twenty days after the rendition of the verdict, and may be approved by the justice. If the appeal be by the defendant, it shall not operate as a supersedeas, nor shall the right of the applicant to enter in and upon the land of the defendant and to appropriate the same to public use be delayed."

By this section either of the parties has a right to appeal to the circuit court from the finding of the jury in the special court by executing a proper bond in the sum of $300. It is further provided in this section, if the appeal be by the defendant, that it shall not operate as a supersedeas, nor defeat the right of the applicant to enter the land of the defendant and appropriate the same to public use for which the land has been condemned. But if the applicant be dissatisfied with the finding of the jury in the special court, and desires to appeal, it is not provided in the statute, nor contemplated by it, that it may execute a bond in the sum of $300 and appeal to the circuit court and at the same time appropriate the land to the use de-

sired.   In other words, while it is provided by section 1696 that
an appeal by the defendant under this section shall not defeat
the right of the applicant to enter on the land, yet it is not said
in the statute that if the applicant is dissatisfied with the finding
of the jury, it may appeal by the execution of a bond, and
proceed to appropriate land without first paying to the owner
or owners the amount assessed by the verdict of the jury in the
special court.    This section of the statute, with reference to
appeals and the right granted to the applicant, was only in-
tended to prevent public works being delayed by the action of
defendants.   It only meant that when a special eminent domain
court had condemned property and assessed damages, and that
party whose property was taken was dissatisfied and desired
an appeal, the work of the applicant should not be delayed on
account of the appeal by the defendant, but it never was in-
tended that if the applicant itself was dissatisfied with the
award made by the jury, it could appeal, and thereby itself
bring about the very delay which it was the purpose of the
legislature to relieve it from, and at the same time proceed to
appropriate the property, pending the appeal, without payment
of the award to the owner, and, if it appropriate the land pend-
ing its own appeal, it shall be considered to have waived its
right to appeal.    The railroad company has undertaken the
appeal in a manner not granted by the eminent domain law.
The only way it could appeal from this award was to execute a
bond in the sum of $300, as provided in section 1696, Code 1892,
and stay off the land pending the appeal.   It does not do this,
but it executes the bond and additionally pays the award to the
clerk and proceeds to appropriate the property.   When it does
this, and takes the property, and the award is accepted by the
defendants, it has waived its right, and there can be no appeal.
The payment of this money by it to the clerk is only provided
for in one instance, and that not in reference to an appeal at
all, but when it has accepted the verdict of the jury and desires

to appropriate the land, the defendant and his attorney being absent from the court. This is the only case wherein the statute authorizes the payment of money during the progress of the proceedings. If an appeal be taken by the applicant under section 1696, Code 1892, it is not necessary to pay the award into court, but it is only necessary to execute the bond for $300; but applicant has no right pending the appeal to appropriate the land. When this award is paid to the clerk, and entry made on the land, and the defendants have accepted the award, it will be conclusively presumed that the applicant has abandoned its appeal, and the payment to the clerk was a payment under section 1693, Code 1892, to the owners of the land in settlement of the whole matter.

The question in this case being one which is dependent solely on the constitution and statutes of this state, we have received little aid in reaching our conclusions from the investigation of outside authorities; but such assistance as we do get from them supports our conclusions.

*Let the judgment be affirmed.*