STATE HIGHWAY COMMISSION *v.* BUCHANAN *et ux.*

(In Banc. Feb. 10, 1936.)

[165 So. 795. No. 32071.]

**Gilbert & Cameron**, of Meridian, for appellees, on motion to dismiss.

**Reily & Parker,** of Meridian, and **E. R. Holmes, Jr.,** Assistant Attorney-General, for appellant, on motion to dismiss.

**Reily & Parker**, of Meridian, and **E. R. Holmes, Jr.**, Assistant Attorney-General, for appellant.

Gilbert & Cameron, of Meridian, for appellees.

Argued orally by **E. R. Holmes, Jr.,** for appellant, and by **C. B. Cameron,** for appellees.

ON MOTION TO DISMISS.

**Griffith, J.,** delivered opinion of the court on motion to dismiss.

In the reconstruction of the primary state highway known as United States highway No. 11 between Meridian and Enterprise, it became necessary to take a strip of land owned by appellees, consisting of approximately nine-tenths of an acre. The commission and the owners could not agree on the compensation therefor to be paid to the owners, and the commission instituted condemnation proceedings in the county court. The jury made an award of five thousand dollars, which the commission

deemed to be excessive to the extent of double the fair price of the land, and the commission appealed to the circuit court. The contract had been let, and, because of delays in the prompt determination of the appeal in the circuit court, through no fault of the commission, the time had arrived when the public contractors were entitled under their contract to enter and proceed with the work on said land. The commission thereupon applied to the chancery court for an injunction against appellees, the owners, to restrain them from interfering with the entry into possession by the commission. The injunction was issued, and the commission entered into possession. The circuit court thereafter affirmed the judgment of the county court, and the commission appealed to this court. Appellees have moved to dismiss the appeal because the commission had taken possession of the land without first paying the amount of the award.

The motion to dismiss is upon the familiar and well-established general procedural principle that a party to a cause cannot accept the benefits of that portion of an indivisible judgment therein which is favorable to him, and at the same time or thereafter prosecute an appeal from such portions of the judgment as militate against him; that an acceptance of a substantial benefit under an indivisible judgment operates as a waiver of the right of appeal therefrom. The argument is that the state highway commission has no right to enter upon and to appropriate to the public use any land of a private owner until three steps have been taken and completed by the commission, namely: First, the institution of a proceeding in eminent domain; second, the prosecution of such proceeding to a judgment of award; and, third, the payment in cash of the amount adjudged as compensation to the owner in the said eminent domain proceeding.

As to all parties having the right to resort to proceedings to take or condemn private property for public use, other than when the state or one of its political sub-

divisions is the condemnor, the statement of the general principle contained in the first sentence of the foregoing paragraph is undoubtedly correct, and we must concede the correctness of the necessity of the taking of the first two steps above mentioned when the state highway commission seeks the right to appropriate and to enter upon the land of a private owner without the owner's consent; that is to say, in such a case the commission undoubtedly has no such right of entry into possession until it has first instituted condemnation proceedings, and has prosecuted same to an original judgment of award, for the reason that up to the time of such original trial and judgment, but not thereafter, the owner has the privilege to challenge the right to take the property at all at any price, as is provided under section 1510, Code 1930. It is undisputed that in the case here before us the commission had taken the two first and necessary steps before it entered into possession, and it is undisputed that the owner has not challenged the taking under section 1510.

Therefore the first question for decision is whether it is necessary that the commission shall have taken the third step, namely, the actual payment in cash of the award before going into possession, and that question we shall answer in the negative, under the authority of Hinds County v. Johnson, 133 Miss. 591, and particularly that part of the opinion in that case beginning at the top of page 607 and continuing to the middle of page 608, 98 So. 95, 97.

It is argued however, that, under section 4998, Code 1930, the only lawful method by which the state highway commission may condemn and thereafter enter into possession of the lands of a private owner is under the general Code chapter on eminent domain, and that section 1494 of that chapter is sufficiently explicit that no condemnor has the right to enter upon and take possession of the condemned property unless and until the amount

of the award has been first paid or tendered. This language is no stronger or more explicit, indeed, is not so strong or explicit, as compared with that contained in section 17, Constitution 1890, which, looking alone to its letter, plainly says that "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law." That language makes no exception and according to the letter thereof includes every condemnor, whatever the character of the condemnor, and yet the court has held in the above-cited language in the Johnson case that, as to the state or its political subdivisions, actual payment in cash first made is not essential; and it requires no argument to demonstrate that a constitutional provision is of equal or even greater force as compared with a statute. And, since the constitutional provision has been and is now construed so as not to require actual cash payment in advance of taking possession in the case of the state or one of its political subdivisions, then a like statutory provision dealing with the identical subject-matter should receive a similar construction. The Johnson case plainly laid down the reason for the requirement in the constitutional section, which reason lies within all the stattutes on the subject, that "the requirement of compensation in advance was to insure payment to the owner. It was in the nature of a guaranty against insolvency of the taker of his land. It was to relieve him of the uncertainties and exigencies of an ordinary unpaid claim, subject to be reduced to judgment, resulting in a nulla bona execution. These reasons can have no application or force to the taking of private property for public use by the state or any of its political subdivisions." And the court thereupon simply followed a maxim of legal construction as old as any of the books of the law that when, and to the extent that, the reasons of or for a rule disappear as regards a particular legal situation,

the rule to that extent also disappears as applicable to that situation. Cessante ratione legis, cessat ipsa lex.

The state highway commission, under section 170 of the Constitution of 1890, as amended in 1924, is a department or division of the state, and within its constitutional and statutory field of action is there the state itself. The commission is supplied with the funds actually on hand to cover the cost of every road project which, under its administration, has passed to the stage where actual work of construction or reconstruction is to be undertaken. Not only is the full faith and credit of the state pledged to the payment for the lands taken for rights of way for state highways, but the commission actually has the money on hand for the payment of all such rights of way immediately when and whenever the amount therefor is finally fixed or agreed upon. Consequently, when we have held and now reaffirm that the state is not required to first pay in actual cash for property taken by it for public purposes, the holding embraces the state highway commission in respect to lands taken for state highway rights of way. The inevitable further conclusion must follow that, when the commission has instituted the appropriate legal proceedings and the proceeding has validly advanced to the stage where judgment of award has been rendered as here and the owner has in the meantime instituted no inquiry under section 1510, Code 1930, then the commission has the lawful right to take possession of the property without first actually paying to the owner the money adjudged or any other amount of money.

And having advanced the inquiry thus far and pronounced the rules of the substantive law which lie at the foundation of the inquiry, we are now in a position to examine the final question whether, when the commission has taken possession after the award but without first paying the amount of said award, it has lost the right of appeal from that award, so far as concerns

the amount thereof. In this ultimate inquiry we are dealing with principles which appertain to the procedural or adjective side of the law. The procedural or adjective law is designed to serve the substantive law, and, when a procedural principle comes into such a conflict with a substantive principle as that, in the particular situation, both cannot stand, and one or the other must give way, then the substantive principle must survive, and the procedural principle must be subordinated to it, or, more properly, it is to be said that another and a more suitable procedural principle must be applied.

If we should say that the commission after the award must not take possession of the land except upon penalty of waiving its right of appeal from the amount of the award, we would reverse the stated rule, and would place · a particular procedural rule in a position of dominance over the substantive rule. We have said that, when the proceedings have advanced to the stage indicated, the commission has the right to take possession without first paying the cash for that right. The proceeding when the judgment of award has been made has then progressed to the stage where it has been adjudicated that the taking is for a public purpose and as a public necessity, and, the condemnor being the only appellant, the right of the condemnor to the land has become fixed and established in any event. In such a situation and as to a condemnor who is not required under the substantive law to actually pay the cash before taking possession, the following procedural rule, equally as well established as the one first mentioned, must be brought into operation, namely, the rule that, where the right accepted by the appellant is one to which appellant is undeniably entitled, whatever the result of the appeal, the appellant does not waive the right of appeal by the acceptance of the then incontestable right. 3 C. J., p. 680.

It has been suggested and argued that the cited and

quoted portions of the opinion in the Johnson case were not necessary to decision therein, and are contrary to sound constitutional principles, and should now be overruled. The point was fully presented and argued in the Johnson case, and it was made one of the grounds, indeed the principal ground, upon which the decision therein was rested, and it is and was sustained by those among the most persuasive of the authorities which could be presented on constitutional law and as to the particular point. And a more inopportune occasion for the overruling of that opinion could hardly have arisen than just now. Even as this present opinion is being prepared, the Legislature and executive departments of our state government are advancing, with a unanimity of purpose heretofore almost unknown, to the launching of the most ambitious road-building program ever undertaken in this state. Millions are being set aside for the purpose, and it is being required that the greatest possible expedition shall be observed in the furtherance of the program. And while the legislative and executive branches are thus advancing, we of the judicial department are requested by a litigant to turn our faces in the backward direction and to overrule a decision by which it is possible for the highway commission to obtain their rights of way with reasonable promptness and at fair sums, and instead thereof to remit them to long delays in legal proceedings or else to submit to the excessive demands which many property owners make and which would have to be met in order to avoid the delays which would seriously affect the expeditious performance of this great statewide work.

It is said, as it is always urged in these cases, that it is against all just notions of constitutional guaranties, that any man shall be turned out of his property without his compensation therefor being first paid to him. We are declaring the law as we find it; we do not make the law. And if there be any injustice in the declaration in

the Johnson case, or as we now reaffirm that case, the Legislature which, even as we write, is now considering this whole highway question, may enact a suitable statute requiring the highway commission or any other department or subdivision of the state to deposit in cash, with its petition to condemn, such a sum as the commission or department or subdivision may deem fair for the property, and which the owner may at once take without prejudice to the rights of either the condemnor or the owner, whether as to the amount later to be fixed by the jury or as to any rights of appeal by either party

**Cook** and **Anderson, JJ.,** concur.

Motion to dismiss appeal overruled.

**Smith, C. J.,** delivered an opinion on motion to dismiss.

I am of the opinion that the motion to dismiss the appeal should be sustained. The right of the state highway commission to acquire land for highway purposes without the consent of the owner thereof is conferred and measured by sections 4998 and 1480 et seq., of the Code of 1930, under which it can take possession of land for highway purposes without the consent of the owner when, but not until, it obtains a judgment adjudicating the compensation to be paid therefor and pays the owner the compensation so awarded him. The judgment in such cases, as is the one here rendered, set forth in section 1493 of the Code of 1930, is, after fixing the amount of the award, that "Upon payment of the said award, applicant can enter upon and take possession of the said property and appropriate it to public use as prayed for in the application." We are not concerned here with what power the Legislature might have conferred on the appellant in this connection, but only with what power

it did confer on it, for the power conferred is in strict accord with section 17 of the Constitution.

The appellant accepted the benefit of the judgment appealed from by taking possession of the land thereunder, and thereby accepted also its burden, for the judgment is an entirety. Moreover, one of the rights of a defendant in an eminent domain proceeding is to have the jury view the land in order to determine the value thereof, and the amount of damages the defendant will sustain from the use thereof by the appellant. Should this appeal be allowed and result in the reversal of the judgment and the new trial the appellant seeks, this right of the appellees may be seriously impaired because of the changed condition of the land caused by the appellant's activities thereon.

**McGowen, J.,** concurs in this opinion.

**Ethridge, J.,** delivered an opinion on motion to dismiss.

The appeal should be dismissed because the highway commission took possession and changed the situation thus cutting off the right of having the jury view the land as provided in the chapter on eminent domain, section 1490, Code 1930.

It is manifest that the appellees were materially prejudiced in their rights by this course of action on the part of the highway commission. The right to have a jury view the premises, should a new trial be granted, is wiped out by the action of the highway commission. This right of viewing the premises is a very valuable right to both parties. A jury is able, from observation and experience, to determine the character of the property and to what uses it might be put by the owner, and can better judge of the value of the property to the owner than would be possible from the mere opinions and testimony of witnesses. The highway commission

had no right to enter upon the premises until the judgment of condemnation had been satisfied by the payment of money either to the property owner or into court.

The state highway commission is given the power of eminent domain by section 4998, Code of 1930, which, among other things, provides: ''Said commission in case it shall be unable to agree with the owners of land containing road building material or for any additional land necessary for widening any existing public highways, or laying out a new public highway, or changing the route of an existing public highway, as provided. for in the foregoing part of this section, said commission shall be authorized to condemn any land needed for either of said purposes, as is fully set forth in this section and the proceedings to acquire such lands by condemnation shall be in conformity with the statutes on the subject of 'Eminent Domain.' The power of 'Eminent Domain' being hereby expressly conferred upon said commission for that purpose.''

The state, of course, had a right, in conferring the power of eminent domain, to provide a method and manner therefor not inconsistent with the Constitution, and to impose such restrictions and limitations as it thought proper, and having adopted for the highway commission the chapter on eminent domain imposes upon it the observance of that chapter. Under the section above quoted, the highway commission does not have the right to take possession until the compensation fixed by the jury is paid. Having failed to pay it and having taken possession, it should not be allowed to appeal from the verdict of the jury.

There are a number of cases decided by this court holding that a party abandons the appeal, or will be held to have waived the right to appeal, when he takes an inconsistent attitude with the rights of the litigants or accepts the benefit of a judgment. In Adams v. Carter,

92 Miss. 579, 47 So. 409, 16 Ann. Cas. 76, the court·held that "An appeal by a plaintiff from a judgment of the circuit (a common law) court awarding him only a part of his demand is barred by his accepting payment of the judgment, where a reversal of the judgment would permit a retrial of the whole case." At page 592 of 92 Miss., at page 410 of 47 So., 16 Ann. Cas. 76, the court said: "The appeal is 'from the whole and every part of the judgment.' The counsel for the plaintiff insists that the defendants, by accepting the money, waived their right to appeal from the judgment. We think this position is correct, and that the appeal must be dismissed. The case comes fully within the principles decided in Cogswell v. Colley, 22 Wis. 399; Flanders v. Merrimac, 44 Wis. 621; Bennett v. Van Syckel, 18 N. Y. 481; Murphy v. Spaulding, 46 N. Y. 556; Carll v. Oakley, 97 N. Y. 633. These decisions go upon the ground that a party cannot proceed to enforce and have the benefit of such portions of a judgment as are in his favor, and appeal from those against him; in other words, that the right to proceed on the judgment and enjoy its fruits, and the right to appeal therefrom, are totally inconsistent positions. The election to pursue one course must be deemed an abandonment of the other. Here the plaintiff paid all the taxes which it was adjudged it should pay as a condition to enjoining those which the court held illegal. The defendants have seen fit to apply for and accept the money thus paid. By complying with the provisions of the judgment, the plaintiff is forever estopped from questioning the legality, either in law or in equity, of the taxes paid."

In Kemper County v. Neville, 95 Miss. 56, 48 So. 727, it was held that "An appeal from a decree of the chancery court adjudging that prior proceedings by a county to establish a highway were void, will be dismissed where the county, after the decree and the appeal, began new

proceedings and regularly established the highway; the questions presented by the appeal having ceased to be of practical importance.'' This was held to be inconsistent with the right of appeal from the judgment of the chancery court. See, also, Parsons v. Rutherford, 84 Miss. 70, 36 So. 187; Helm & N. W. R. Co. v. Turner, 89 Miss. 334, 344, 42 So. 377, 379—all holding to the same effect.

In Alabama & M. R. Co. v. Mallett, 118 Miss. 31, 78 So. 952, it was held that, under the Code of 1906, sections 1871, 1872, providing that every party shall have the right to appeal to the circuit court from the finding of the jury in the special court of eminent domain by executing a bond with sufficient sureties and that the appeal shall not operate as a supersedeas, the owner is estopped to appeal to the circuit court if he has accepted the award adjudged by the eminent domain court. See, also, Mississippi and Southern Digest, Appeal and Error, Key No. 781(7).

In Humphreys County v. Cashin, 128 Miss. 236, 90 So. 888, it was held in the first syllabus that, where a statute permits the state, or a subdivision thereof, to enter or be brought into court as a litigant, it becomes subject, in the absence of a provision in the statute to the contrary, to all the rules governing the procedure of the court in other cases. In other words, unless the statute specially gives some advantage to the state or its subdivisions, it is subject to the same rules as other litigants. It would be manifestly unfair to hold that the property owner could not appeal after accepting the judgment award, or appeal and then accept the judgment award and have his appeal dismissed, and, at the same time, to permit a state agency to have set aside the appeal when it takes action inconsistent with the judgment.

The whole purpose of our statutory scheme with reference to suits by and against the state and its sub-

divisions is to place them on an equality of rights in all procedural matters. By section 6002, Code,1930, it is provided that the state shall be entitled to bring all actions and all remedies to which individuals are entitled in a given state of case, and may maintain actions of unlawful entry and detainer in all cases, at its option, for the recovery of land. And by section 6004, counties are given like rights. The manifest purpose of these sections is to put the state and its subdivisions on a plane of exact equality with those who litigate with it. And, as stated in the Cashin case, unless the statute makes an exception, the same rules will be applied to the state in its litigation as to other litigants.

It appears to me that it necessarily follows from the facts herein stated and the cases referred to that the appeal should be dismissed.

While I am of the opinion that the appeal should be dismissed for the reasons above stated, and think that the case of Hinds County v. Johnson, 133 Miss. 591, 98 So. 95, is not applicable to this proceeding, because the state, in conferring the power of eminent domain on the state highway commission, directed that it should be exercised in accordance with the provisions of the chapter on eminent domain, and that the provisions conferring the power on the board of supervisors, on which the Johnson case is decided, are not applicable here, still, if the Johnson case should lead to the conclusion that the highway commission can enter into possession without payment of the amount assessed, and harass the property owner by litigation, while, at the same time, holding and using his property, I think it is unsound and should be overruled. It is doubtful if said case holds what is now claimed for it. See language in that opinion, pages 605, 606, of 133 Miss., pages 96, 97, of 98 So. Neither of the authorities cited in that opinion, as sustaining it, is applicable to a provision such as we have in section 17 of our Constitution, requiring payment to

be first made. In the Johnson case is cited the case of Cage v. Trager, 60 Miss. 563, as holding that the government or its subdivisions may enter before payment of the compensation. This case did not so hold. What was there involved was the constitutionality of an act devolving upon the property owner the duty, after notice was given him of purpose to take his property, to propound or assert his claim for damages within a given period. The court held that it was competent for the Legislature to impose upon the property owner the duty to propound and prove his damages, but it did not hold that possession could be taken prior to the payment of such damages. At page 569 of 60 Miss. the court said: "They both provide for actual or constructive notice to the property-holder, afford him opportunity to present his claim for compensation, and prohibit the taking possession or appropriation of his land by the public until his claim has been adjudicated by an impartial tribunal, and the amount found due him been paid or tendered. This, according to all the authorities, is sufficient where the State or any of its subdivisions is concerned. They are, indeed, many cases which hold that where the State is a party to the proceedings, occupation of the land may precede actual payment or tender, *a doctrine which we are by no means prepared to sanction.* Wherever, however, due notice has been given, and a fair opportunity afforded to propound the claim for compensation, we see no constitutional objection to an imposition on the owner of the duty of asking it. Cooley's Const. Lim. 560, 561, 562." (Italics ours.)

It will be seen that the court did not commit itself to the doctrine that possession could be taken before payment.

The other case, Joslin Mfg. Co. v. Providence, 262 U. S. 668, 43 S. Ct. 684, 67 L. Ed. 1167, did not involve the question at all, so far as the provision for eminent domain was concerned. The suit there was to test wheth-

er the act of Rhode Island (Laws R. I. 1915, chap. 1278) violated the Fourteenth Amendment to the Federal Constitution. The court did not refer to the Rhode Island Constitution upon that subject; it only dealt with the Federal Constitution upon that proposition. The Supreme Court of Rhode Island, however, had, prior to that decision, held that the act there involved did not violate the Constitution of Rhode Island, which Constitution did not have the requirement that the compensation be first made. See Joslin Mfg. Co. v. Clarke, 41 R. I. 350, 103 A. 935. Our own Constitution, in its present form, requiring compensation first to be made before taking possession, has been in effect since 1832 (Const. 1832, art. 1, section 13), and has been construed by our own state high Court of Errors and Appeals, and by the Supreme Courts succeeding it.

In Thompson v. Grand Gulf R. & B. Co., 3 How (Miss.) 240, 34 Am. Dec. 81, the Constitution (Const. 1832, art. 1, sec. 13) was held to require payment to precede the taking of the property. In the first headnote, it is stated: "Under that provision of the bill of rights which declares, that 'no person's property shall be taken or applied to public use without the consent of the legislature, and without a just compensation first made therefor,' the compensation must precede the seizure of the property for public uses." The court, at page 247 of the Mississippi Report of this case, said: "Several objections are made to the regularity of the proceedings of the circuit court, but it will be unnecessary to notice them in detail, as the case must be disposed of on the grave question of the constitutionality of the charter, taken and relied upon in the argument. That part of the charter which is said to conflict with the constitution, is the latter clause of the first section of the amendment. The ground taken arises under the provision in the bill of rights, which declares that 'no person's property shall be taken or applied to public use without the consent

of the legislature, and without just compensation first
made therefor.' It is insisted that the compensation
should be first made, and that a judgment is not com-
pensation. On the other hand it is said that it is suf-
ficient for the legislature to provide the means by which
compensation is to be acquired. To determine between
the constitution and the legislature, is often embarrass-
ing, and always demands a cautious and deliberate in-
vestigation. In the inquiry is involved the highest func-
tion of the judicial department. The acts of the legisla-
ture should be sustained if possible; the constitution
must be preserved inviolate. We have approached this
question under a due sense of its importance, and have
given to it such investigation as the limit of our time
would admit, and we are entirely satisfied with the cor-
rectness of the result to which that investigation has
led. It is a sound rule in construing constitutions, that
no word is to be rejected or disregarded which may
have a material bearing on the rights of the citizen,
and such construction should be given as will best pro-
tect private rights. because constitutions are limitations,
which confine each department of the government to
the exercise of such powers only as have been delegated.
The word 'first,' used in the bill of rights, cannot be
regarded as useless; nor are we at liberty to suppose that
it was inserted without design or by accident. The
sentence is perfectly intelligible as it stands, and in ac-
cordance with first principles. By regarding the word
'first' as material, there can be no difficulty in carrying
the provision into execution by proper legislation; but
by rejecting it, and assuming the position that it is suf-
ficient for the legislature to provide the means or the
mode of obtaining compensation, the provision might
be wholly defeated, and owners compelled to part with
their property without compensation. If the law be sus-
tainable, it must operate generally, there is no exception
to it." On page 248, the court further said: "We cannot

presume that the convention intended that this right should be exercised unless on terms the most favorable to individuals. Life, liberty and property are three great objects of governmental protection, and we must infer that due precaution has been used for the protection of each of them. To divest the right to property without ample compensation, would be unjust. The judgment in this case is not compensation. A judgment is but a security for compensation or satisfaction, which may or may not prove productive." The court here, in construing the provision, has expressly held that a judgment is not payment or compensation.

In Isom v. Mississippi Cent. R. Co., 36 Miss. 300, the court again construed the Constitution, and held that the Bill of Rights of the Constitution (Const. 1832, art. 1, sec. 13) "which declares that no 'person's property shall be taken for public use, without the consent of the legislature, and without compensation being first made therefor,' secures to the owner an equivalent in money for the injury and deprivation of right thus inflicted, to be paid before the appropriation of his property is made; and hence, it is incompetent for the legislature to direct that the owner shall be paid otherwise than in gold or silver, or that the tribunal authorized to ascertain the amount of injury sustained, shall allow as a set-off against him claim for damages, any benefit he may receive from the construction of the public improvement to which his property is proposed to be applied." At page 310, the court said: "The spirit and policy of our institutions, are at war with the doctrine of legislative omnipotence. Ours is a government founded upon an express, written compact, reduced to exactitude and certainty, expressive of the sovereign will of the people, fixing the limits and marking the bounds of legislative, executive, and judicial powers; our constitutions all originated in a spirit of distrust of governmental power, and from a conviction that, unrestrained,

its tendency was to despotism. But, notwithstanding these facts, the legislative and judicial history of this country, especially in relation to these great corporations, or whenever works of great public utility or necessity come in question, chronicles one continued series of encroachments on the rights of the citizen. . . . But the natural tendency of power and wealth to accumulate inordinately, the strong proclivity of every department in popular governments, to consult the good of the many, at the expense of the rights of the few, here as elsewhere, in all time past, leave but little hope that the utmost caution, formally embodied in written constitutions, will ever secure that perfect protection to individual right, which was designed, and is desired, by the great body of the people. Smith's Commentaries, section 335. Hence the great necessity, on the part of the judicial department, to scrutinize well, not only the conduct of the other departments, in cases appealing to it for protection against such encroachments, but especially to guard itself against the natural influences, which the clamors of the powerful many are calculated to exert. So that the humblest, weakest citizen, claiming a legal right, may assert it, against the interests or combinations of the many, or the public even, with a full confidence that neither public necessity, public utility, nor public convenience, the pleas of all despotism, shall prevail against a single private right, secured by our constitution and laws. . . . The moment then that private property is taken for public use, nay more, 'before any person's property can be applied to public use' 'just compensation' shall 'first be made.' The obligation of the State is then immediate; its duty to compensate, becomes a debt, as soon as the amount is ascertained, and its duty to pay in money, binding. Ogden v. Saunders, 12 Wheat. 213, 265, 339, 6 L. Ed. 606. [Other authorities cited.] Money is the only standard of value known to our constitution. It is not in the power of

the State to make anything but gold or silver coin a tender in payment of debts. Stewart v. Raymond R. Co., 7 Smedes & M. 568, 575. If the State could, under this prohibition, fix, at her pleasure, the character of the compensation by any other standard of value, this provision would be nugatory; for, it would make her discretion the measure of compensation, at last. [Citing authorities.] The 'just compensation, first made,' means an equivalent in money for the injury or deprivation of right thus inflicted; that equivalent should not only be in money, but should be immediate; that compensation is the present injury sustained by such deprivation of right, without regard to future or prospective benefits, or to the unreal advantages likely to accrue, on account of the contemplated construction of the road in the future. 2 Kent Com. 415, note. . . . This court has held, in the case of Brown v. Beatty, 34 Miss. 227, 69 Am. Dec. 389, that a party is entitled not only to the cash value of his land, but to indemnity for the damage done to his adjacent land, consequent on the location of the road; and that too in cash, and not in railroad advantages. . . . He was entitled to be paid in money. It was clearly as incompetent for the legislature to prescribe in what he should be paid, as to prescribe how much or how little he should receive. Manifestly, a party whose property has been taken and appropriated to public use, in the construction of a railroad, cannot be compelled to receive, as a compensation, the estimated enhancement in the value of his remaining property. . . . To say that the owner shall be paid at any other time or in anything else than the measure of value known to the constitution; or that he shall receive more or less than the loss or injury then capable of definite inquiry and ascertainment; or that his claim to this 'compensation' shall be extinguished by the probable benfits which, in the future, may result from the construction of a road, which may not be finished in 'six-

teen years' (the time limited by the charter), cannot, by any fair interpretation of the constitution, be regarded as 'just compensation, first made.' This provision of the charter, therefore, which requires 'the jury, in estimating the damages, to take into the estimate the benefit resulting to such owner by reason of such road passing through his land, towards the extinguishment of such claim for damages,' is subversive of the rights intended to be secured by this clause of the constitution, and to that extent is void.''

This doctrine has been announced in several other cases. See Penrice v. Wallis, 37 Miss. 172; New Orleans, etc., R. Co. v. Moye, 39 Miss. 374; City of Jackson v. Williams, 92 Miss. 301, 46 So. 551; King v. Vicksburg Railway & Light Co., 88 Miss. 456, at page 487, 42 So. 204, 6 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749; Hill v. Woodward, 100 Miss. 879, 57 So. 294, 39 L. R. A. (N. S.) 538, Ann. Cas. 1914A, 390; and Pearson v. Johnson, 54 Miss. 259, in which the court said: ''Private property must yield to the public necessity. The owner can plead no inconvenience or damage to himself in bar of the right of eminent domain in the government. But, before the condemnation to the public use shall be complete, he must be paid,—paid, not his estimate, but what shall be assessed as compensation. The Constitution has enjoined on the legislature the duty of providing a method of exercising this high prerogative. No statute will satisfy the Constitution which does not embody the idea that the public cannot extinguish private dominion, and transfer property to the common use, unless payment is made before the supreme authority enters upon and takes control of the property. That principle was distinctly announced in Thompson v. Grand Gulf Railroad & Banking Co., 3 How. (Miss.) 240, 34 Am. Dec. 81. The guaranty of the Constitution is not satisfied, as held in that case, by giving to the owner a judgment against the corporation or persons specially interested in the

public use of the property. Judgment is not satisfaction or payment. It is but a debt, conclusively established, with certain privileges incident to it to procure satisfaction. Further, the Constitution is not satisfied by a statute which is not framed on the theory that compensation must be assessed, and actually made or tendered, to the owner; and it must not be on the plan that the land shall be condemned, and, if the owner does not in a suit ask compensation in a time limited, he shall be esteemed as waiving his right. Since the individual holds property subordinate to the public necessity, the Constitution intends that, whenever that ultimate, paramount right is exerted, there must be what is in its nature a compulsory transfer of the owner's dominion for a price to be estimated and paid. The proceeding has the elements of an enforced sale. The consent of the owner is not required, his dissent is not regarded, either in parting with the property or fixing the value. Both are accomplished in invitum. Two conditions are imposed as limitations on the right of eminent domain, incident to every form of sovereignty: First, the decision in some form of inquest that the private property is needed for the particular public use; and, second, the assessment, and payment, or tender, of compensation before it shall thus be appropriated.''

This decision was rendered in October, 1876, after the construction had been placed upon the Constitution in the cases of Thompson v. Grand Gulf R. & B. Co., and Isom v. Mississippi Cent. R. Co., supra. The Constitution of 1869 had been adopted with the construction integrated in the Constitution, thereby becoming a part of it.

In Board of Levee Com'rs v. Dancy, 65 Miss. 335, 3 So. 568, the court, speaking through Judge Campbell, reaffirmed the principles in the above cases.

Where a statute or constitution, which has been construed by the Supreme Court, is re-enacted without ma-

terial change, and the same question again arises, the construction is controlling. Shotwell v. Covington, 69 Miss. 735, 12 So. 260; Wetherbee v. Roots, 72 Miss. 355, 16 So. 902; Davis v. Holberg, 59 Miss. 362; Hoy v. Hoy, 93 Miss. 732, 48 So. 903, 136 Am. St. Rep. 548, 17 Ann. Cas. 1137, 25 L. R. A. (N. S.) 182, note; White v. Illinois Cent. R. Co., 99 Miss. 651, 55 So. 593; Hughes v. Gully, State Tax Collector, 170 Miss. 425, 153 So. 528; Green v. Weller, 32 Miss. 650; Black, Const. Law, 89, 90, and authorities there cited; Mississippi and Southern Digest, Const. Law, Key No. 18; Mississippi Ann. Dig., Statutes, sec. 225¾, and Mississippi and Southern Digest, Statutes, Key No. 225¾.

See, also, upon this proposition of due payment being first made, Brownsville v. Cavazos, 100 U. S. 138, 25 L. Ed. 574, wherein the United States Supreme Court, in construing a provision of the Constitution of Tamaulipas, one of the states of Mexico, which provided that private property should not be taken for public use without "previous compensation," held that payment was a condition precedent to the taking of property.

It will be noted, from a comparison of section 17 of the Mississippi Constitution with the Fifth Amendment to the United States Constitution, that it does not require payment to be first made. The decision of the United States Supreme Court above referred to therefore shows that the Court recognized the force and effect of words directing the payment before the taking. Something is said in Judge Griffith's opinion about the requirements of progress and the progressive spirit of the Legislature. I desire to be understood as favoring progress when it can be made consistently with constitutional rights. I indulge a liberal attitude toward the state in all its agencies, within their rightful spheres. But, in my opinion, true progress is made by respecting the constitutional rights of citizens and restraining the sovereign from acts of spoliation and injustice.

The power of eminent domain can only be used for the purposes of the state. The use must be a public use, and it does not matter whether the state has delegated the power of eminent domain to a public or a semipublic agency, it is still the state acting. The state alone has the power to act in taking from the citizen his property for a public use. It is held, both by this state and by the United States, that a citizen cannot be deprived of his property for a private purpose. The state's promise to pay is not money, as held in the cases referred to, and it is demonstrated that such promise is not equivalent to money by the fact that, in the case of State of Mississippi v. Johnson, 25 Miss. 625, in which judgment was rendered in favor of certain holders of bonds of the Mississippi Union Bank, the state of Mississippi was adjudged liable to such holders for the amount of their bonds, which judgment has never been paid. Only last year the right of the bondholders to sue the state was denied by the Supreme Court of the United States, upon the ground that the State could not be sued without its consent. The state may withdraw its consent to be sued, as it did in this instance, leaving its creditor without any means of securing his demands against the state or its subdivisions. It would be possible for the state to withdraw at once, or at any time it saw proper, the right to sue the highway commission or any other governmental agency. Section 17 and the prior sections of former Constitutions were enacted in view of this; and the only sound construction to be given such section is that the state and its subdivisions must pay before taking the property of a private citizen.

### On the Merits.

**Ethridge, P. J.**, delivered opinion of the court.

This is an appeal from an award of five thousand dollars made unto the appellees by an eminent domain court, which award was affirmed by the circuit court

of Lauderdale county; hence this appeal. The property condemned was owned by the appellees, and was used by the appellant in making improvements on Highway No. 11 where it crosses Highway No. 80, and property on the south side of Highway No. 80, consisting of two and eighty-nine hundredths acres, is being used by the appellees as a homestead in connection with which they ran a small dairy. This property of the appellees faces Highway No. 80, with a frontage of two hundred and fifty feet and a depth of three hundred seventy-seven feet, and had been plotted into lots, but no streets had ever been opened across it.

The highway proposed to be laid out across this property entered it near the southwest corner and proceeded in a northeasterly direction, being one hundred feet wide, and, at the point approaching Highway No. 80, it was flared out so as to make a frontage of two hundred feet on said highway.

Prior to the trial of this cause in the county court where the proceeding was instituted, the property of Mrs. Petit lying north of the Highway No. 80, and having a frontage of sixty feet and a depth of two hundred thirty-five feet, had been sold by her to the State Highway Commission at and for the sum of three thousand two hundred dollars. There was a residence on this property which she was permitted to remove, and the proof tends to show that seven hundred dollars of said three thousand two hundred dollars was for the purpose of having said house moved and repaired thereafter, and two thousand five hundred dollars was to pay for the land. There was also a purchase by the State Highway Commission from one Hawkins of a lot with forty-eight feet frontage lying north of the highway, at a consideration of forty dollars per front foot.

On the trial of the cause, the price of these two lots was offered in evidence, and all the witnesses testifying for the property owners based their opinions as to values and damages upon the price of these two lots. The

admission of such testimony was objected to by the appellant, but such objection was overruled.

The owners of property condemned testified that the only way they could value the property was by taking this sale price of the Petit and Hawkins property as a basis, and several witnesses based their judgment of the valuation upon this sale price and its comparison with the property of the appellees. One witness introduced by the State Highway Commission testified that the price paid for the Petit and Hawkins property was grossly excessive.

There was no proof as to whether or not the purchase made by the State Highway Commission was voluntary, or whether the sale by the property owners was voluntary and uninfluenced by the fact that the property was to be condemned by eminent domain proceedings.

There was testimony that the laying out of the highway, as described in the application, would destroy the property for dairy purposes; would necessitate the appellees removing their residence; and that, owing to the situation of the property not taken, it would be difficult to sell it as residence property, and its value therefor would be greatly damaged, if not entirely destroyed. It seems that there had been no other sales of property in that immediate community for some time, and none are shown since 1928.

So, as the record stands, there was no definite, legal basis for finding the damage except by basing it upon the sale price of the Pettitt and Hawkins property.

It is, of course, well settled in this state that benefits shared by a property owner in common with the general public are not to be considered or set off against a property owner's claim for damages.

The property in the case at bar was viewed by the jury, and their view, in connection with the testimony, caused them to render a verdict for five thousand dollars.

It is difficult to state, from the testimony, exactly how the appellees' property compared with that lying north of the highway which it had purchased. There is some testimony indicating a similarity, and it is manifest that all the parties testifying were influenced, to some extent, by the sales price of the property lying north of the highway.

The great majority of the courts that have passed upon this question have held that sales values or prices made in condemnation purchases to avoid litigation are not voluntary within the meaning of the law. 10 R. C. L., p. 220 et seq., sec. 188. The courts of New Jersey, Louisiana, and Massachusetts seem to admit evidence of sales made to avoid condemnation proceedings, and sales of like property near the time, to show the value of the property sold to avoid litigation. The reasoning of these authorities is that sales made in contemplation of condemnation proceedings to avoid the uncertainties thereof are not admissible, not being free and voluntary, and there being no meeting of minds as to what is a reasonable and fair value of the property involved, apart from the necessities of the case. One may be willing to take less rather than go through with a lawsuit and take the risks of a jury verdict. On the other hand, the condemnor may be willing to pay more than the actual, fair value of the property to avoid the uncertainties of litigation.

We prefer, in this case, not to lay down any definite and fixed rule upon that question, but we believe that before such evidence is offered and received, if it may be done at all, which we do not here decide, there must be preliminary proof, as a condition precedent to the reception of such evidence, that the parties considering sales were uninfluenced by prospective litigation, and that the minds of the parties on each side met upon the basis of what the actual value was. In other words, the proof must show that the person who has a desire

to sell would be willing to take the amount paid regardless of condemnation, and the buyer must be willing to pay the amount for the property taken regardless of prospective litigation.

In condemnation proceedings, a wide latitude is allowed under the law as to values, and usually intelligent and experienced witnesses, having knowledge of property and the uses to which it may be put, and who can give their opinions as to valuations, may be selected. It is not necessary that there should be actual sales made in the particular locality where the condemnation is being had for values to be ascertained, but the judgment of people familiar with property and its value, and with the uses to which such property may be put, will fix such values.

The property here involved is within the corporate limits of the city of Meridian, and we are satisfied that many witnesses may be obtained who are thoroughly familiar with the value of property in that locality, and the uses to which it may be put, and who can, from their knowledge and experience in and around the city, give intelligent and just opinions as to values, without considering sales of adjacent lands probably made for the purpose of avoiding litigation.

We are very reluctant to reverse this judgment, because the highway has been laid out and the road constructed; but we are satisfied that the court below was in error in admitting proof of the two sales under the evidence. The judgment will, therefore, be reversed and the cause remanded.

Reversed and remanded.